## ERICK BOWMAN REMEDY CO., Inc., v. JENSEN SALSBERY LABORATORIES, Inc.

(Circuit Court of Appeals, Eighth Circuit. December 27, 1926.)

No. 7364.

1. **Libel and slander** ⬅73—**Only in respect to its credit, property, or business can corporation be injured by false publication, and it has no such reputation as individual has.**

It is only in respect to its credit, property, or business that a corporation can be injured by false publication, and corporation has no reputation in sense that individual has.

2. **Libel and slander** ⬅9(1)—**To be "libelous per se," as against corporation, publication must itself show that it will directly injure corporation's credit, property, or business.**

To be "libelous per se," as against corporation, it must appear from publication itself, and without aid of extrinsic evidence, that words complained of will directly injure credit, property, or business of corporation, and result in pecuniary loss.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Libel.]

3. **Libel and slander** ⬅81, 82—**Extrinsic facts, rendering actionable defamatory words not actionable per se, and proper colloquium, must be pleaded.**

Where defamatory words are not actionable per se, it is necessary to plead by way of inducement such extrinsic facts as will render words actionable, and to connect such extrinsic facts by proper colloquium with the particular words.

4. **Libel and slander** ⬅81—**No inducement or averment of extrinsic facts is necessary, when defamatory matter is actionable per se.**

No inducement or extrinsic facts need be alleged, when defamatory matter is actionable per se.

5. **Libel and slander** ⬅9(7)—**Publication merely disparaging goods or property, without imputing fraud, is not actionable per se.**

Publication which merely disparages goods or property, by making accusations against quality, purity, or value thereof, is not actionable per se, in absence of imputation of fraud or dishonesty.

6. **Libel and slander** ⬅9(7)—**Article purporting to analyze plaintiff's live stock remedy, and stating that Barnum's statement that American people like to be humbugged still applies, held not libelous per se.**

Article published by defendant manufacturer of live stock remedies, purporting to give analysis of remedy manufactured by plaintiff, recit-

ing that this "only goes to prove that P. T. Barnum's statement 50 years ago can be applied even at the present time," without charging any specific person or corporation with fraud or dishonesty, *held* not libelous per se, even if Barnum's alleged statement that American people like to be humbugged be included therein.

7. **Libel and slander** ⬅89(1)—**Special damages from words not actionable per se must be particularly alleged.**

Where words are not actionable per se, but become so by reason of some special damage occasioned by them, such special damage must be particularly averred.

8. **Libel and slander** ⬅118—**"Special damages" denote actual loss naturally, but not necessarily, resulting from defamatory words, as distinguished from "general damages" presumed to necessarily result therefrom.**

"Special damages," as used in libel actions, denote pecuniary or actual loss which has in fact occurred as natural, but not necessary, result of wrong, and they do not follow by implication of law on proof of defamatory words, as distinguished from "general damages," which law presumes actually, proximately, and necessarily result from publication of defamatory words.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Damages; Special Damages.]

9. **Libel and slander** ⬅118—**Special damages to business may be recovered for loss of individual customers, and in exceptional cases for loss of general business.**

Special damages to trade or business may be recovered, where there is loss of individual customers, or, in exceptional cases, where there is general loss of business from published statement about such business which is reasonably likely to produce, and in the ordinary course of things, does produce general loss of business in which it is not possible for plaintiff to specify particular customers lost.

10. **Libel and slander** ⬅89(3)—**Complaint seeking special damages for loss of business from false publication must name customers lost, or allege general diminution in business and facts showing special damages directly resulted.**

Complaint seeking special damages to corporation's business from libelous publication must allege loss of particular customers by name, or general diminution in its business with extrinsic facts showing that such damages were natural and direct result of false publication, and in latter case should allege facts showing established business, amount of sales for substantial period preceding and subsequent to publication, that loss was natural and probable result of publication, and that plaintiff could not allege names of particular customers lost.

11. **Libel and slander** ⬅100(2)—**Corporation suing for special damages to business cannot recover for loss of particular customers on allegations of general loss.**

Corporation, suing for special damages to its business for libelous publication, cannot in complaint allege general loss of customers, and at trial recover for loss of particular custom-

ers, but it should allege names of customers lost in complaint.

**12. Libel and slander ⟨⟩89(3)—Complaint alleging injury to plaintiff's business in specified sum held insufficient to allow recovery of special damages for loss of particular customers or general loss.**

Complaint in action for libelous publication, alleging injury to corporation in its business, good name, and business reputation, loss in business and credit, and loss of gains and profits, with resulting damages in the sum of $100,000, *held* insufficient to permit proof or sustain recovery for either general loss of business or of particular customers.

In Error to the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

Action by the Erick Bowman Remedy Company, Inc., against the Jensen Salsbery Laboratories, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

John Ott, of Minneapolis, Minn. (T. A. Kingland, of Owatonna, Minn., and F. W. Murphy, of Wheaton, Minn., on the brief), for plaintiff in error.

I. N. Watson, of Kansas City, Mo. (M. B. Webber, of Winona, Minn., on the brief), for defendant in error.

Before VAN VALKENBURGH, Circuit Judge, and PHILLIPS, District Judge.

PHILLIPS, District Judge. The Erick Bowman Remedy Company, Inc., brought this action against the Jensen Salsbery Laboratories, Inc., to recover damages for alleged libel.

After alleging the jurisdictional facts, the complaint proceeds as follows:

"(3) That during all the times stated in this complaint and since the fall of 1921, this plaintiff has been engaged and is still engaged in the manufacture and sale to the general public of a preparation and medicine called and known as the Erick Bowman Abortion Remedy to relieve or cure contagious abortion in cows and sows.

"(4) That the business of this plaintiff as such manufacturer and seller of said remedy has always depended largely on the good reputation and credit of this plaintiff, and upon its honesty and fair dealing with its customers and the general public and upon the trust and confidence reposed in it by its customers and the general public.

"(5) That, prior to the published article hereinafter set forth, the plaintiff by honest dealing, hard work, and much expense had built up a good business in the sale of said remedy in the state of Minnesota and a good

interstate commerce business in the sale of said remedy among the several states of the United States and especially in the states of the West, Northwest and Middle West, and the plaintiff had built up a good business reputation and credit."

The complaint then alleges that the defendant is engaged in the manufacture and sale of live stock remedies; that it is a competitor of the plaintiff; that it publishes and distributes to veterinarians and persons interested in raising cattle, hogs, and live stock in the several states of the United States, a publication known as the Jen-Sal Journal; that such publication is widely circulated and distributed in the West, Northwest and Middle West; that it was and is distributed through the mails and otherwise to the customers and prospective customers of plaintiff. The complaint then proceeds as follows:

"(8) That the defendant well knowing all the foregoing facts and with the deliberate purpose and malicious intent to injure the plaintiff in its good name and in its business and business reputation and credit, in the issue of the said the Jen-Sal Journal of July, 1923, composed or caused to be composed and published on page 22 of said publication, of and concerning this plaintiff, the following false and defamatory matter, to wit:

" 'Bowman's Abortion Remedy.

" 'The North Dakota Agricultural College submitted the following analysis of a sample of Bowman's Abortion Remedy:

Ash per cent............................ 1.64
Moisture (as received) %................ 4.55
Sucrose (by clerget) %..................72.83
Polarization direct..................Plus   72
Polarization invert.................Minus  24
Reducing sugar before inversion %...... 5.42
Reducing sugar after inversion %.......81.20
Sucrose (by copper) %..................71.99
Total sugar (by copper) %..............77.41
Residue soluble in water %............. 7.65
Residue insoluble in water %........... 9.55

" 'Sample is brown sugar and bran.
" 'By State Food Commissioner and Chemist.

" 'This analysis corresponds in all respects to the analysis of samples of this product sent to our laboratory, which only goes to prove that P. T. Barnum's statement 50 years ago can be applied even at the present time.

" 'We understand that the Farm Bureau of North Dakota is going to put on a publicity campaign to protect the live stock owners against expenditures for such products. This is one piece of work that the Farm Bureau can handle in an effective way.'

"(9) That by the publication of said words and article, the defendant intended to assert and to be understood as asserting and by the readers of said journal and publication was in fact understood as asserting that the said remedy manufactured and sold by this plaintiff was worthless, and would not cure the disease of abortion among cows and sows, and that the said remedy was a fraud and a humbug, and that this plaintiff was knowingly engaged in the business of cheating and defrauding the public and all persons who bought said remedy for the purpose for which it was manufactured and sold, and that the Farm Bureau of North Dakota was going to engage in a publicity campaign to expose said fraud and to protect live stock owners against buying such worthless products as plaintiff was manufacturing and selling, and by so doing the said Farm Bureau would be doing a good service to all those who might be victimized by buying plaintiff's said remedy."

The complaint then alleges that the formula for Bowman's Abortion Remedy is a secret formula known alone to plaintiff, and that it has always been very successful in curing cows and sows of the disease of abortion, when used according to plaintiff's instructions. The complaint then alleges damages, as follows:

"(11) That the said article published by the defendant is misleading, false, defamatory and malicious, and by means of said publication the plaintiff has been greatly injured in its good name and business reputation, and has suffered great loss in its business and credit, and has been deprived of great gains and profits which otherwise it would have made, and by reason of said facts the plaintiff has suffered damages in the sum of one hundred thousand dollars ($100,000.-00), no part of which has been paid."

The defendant duly appeared and filed its answer.

The cause came on for trial, and a jury was duly impaneled and sworn to try the cause. Following the opening statement of counsel for the plaintiff, defendant, through its counsel, moved the court to dismiss the cause on the ground that neither the complaint nor the statement of counsel stated any cause of action against the defendant. This motion was granted, and the cause dismissed. From the judgment of dismissal, this writ of error was sued out.

The trial court assigned as its reason for dismissing the cause that the article was not libelous per se and special damages were not alleged.

17 F.(2d)—17

The contentions of counsel for plaintiff are, first, that the publication was libelous per se; and, second, that the allegation of damages was sufficient, even if the article was not libelous per se.

[1] The first question presented is: Was the publication libelous per se?

A corporation has no reputation in the sense that an individual has. Memphis T. Co. v. Cumberland T. & T. Co. (C. C. A. 6) 145 F. 904, 906; Security Benefit Ass'n v. Daily News Pub. Co. (C. C. A. 8) 299 F. 445; Vitagraph Co. of America v. Ford (D. C.) 241 F. 681, 683; Reporters' Ass'n of America v. Sun Print. & Pub. Ass'n, 186 N. Y. 437, 79 N. E. 710. It is only in respect to its credit, property, or business that a corporation can be injured by a false publication. Memphis T. Co. v. Cumberland T. & T. Co., supra; Security Benefit Ass'n v. Daily News Pub. Co., supra; Farbenfabriken of Elberfeld Co. v. Beringer (C. C. A. 3) 158 F. 802, 804; Axton-Fisher Tobacco Co. v. Evening Post, 169 Ky. 64, 183 S. W. 269, 274, L. R. A. 1916E, 667, Ann. Cas. 1918B, 560; People's U. S. Bank v. Goodwin, 167 Mo. App. 211, 149 S. W 1148, 1150; Adirondack Record, Inc., v. Lawrence, 202 App. Div. 251, 195 N. Y. S. 627, 629, 630; Kemble & Mills of Pittsburgh v. Kaighn, 131 App. Div. 63, 115 N. Y. S. 809, 811, 812.

In Fry v. McCord et al., 95 Tenn. 678, 33 S. W. 568, the court said:

"It has been held that, in order to constitute language libelous per se, it must be 'either such as necessarily, in fact, or by presumption of evidence, occasions damage to him of whom or whose affairs it is spoken.' Townsh. Sland. & L. (4th Ed.) § 146; Newell, Defam. p. 181, § 14. 'Such language confers a prima facie right of action, and is prima facie a wrong, and injurious per se; and the law will presume damage, without proof, merely from implication or presumption from the publication.' Townsh. Sland. & L. (4th Ed.) § 147. 'Language which, however, does not, as a necessary consequence, occasion damage to the party published, is not per se libelous, and in such cases a right of action exists only when, as a necessary and proximate consequence of the publication, special damage ensued to the party published.' Id. §§ 146–148; Bank v. Bowdre, 92 Tenn. 736, 23 S. W. 131. We think a statement in substance and effect the same, but in different language, is that words which upon their face, and without the aid of extrinsic proof, are injurious, are libelous per se; but if the injurious character of the words appear, not from their face, in their

usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous per se."

The Circuit Court of Appeals for the Sixth Circuit, in Memphis T. Co. v. Cumberland T. & T. Co., supra, quotes with approval the definition of a publication libelous per se given in Fry v. McCord, supra.

[2] In order for a publication to be libelous per se as against a corporation, it must appear, from the publication itself and without the aid of extrinsic evidence, that the words complained of will directly injure the credit, property or business of the corporation and result in pecuniary loss. Security Benefit Ass'n v. Daily News, supra; Vitagraph Co. of America v. Ford, supra; Den Norske Amer. Actiesselskabet v. Sun Print. & Pub. Ass'n, 226 N. Y. 1, 122 N. E. 463, 464; 36 C. J. p. 1150, § 17.

[3] Where the words are not actionable per se, it is necessary to plead by way of inducement such extrinsic facts as will render the words actionable and to connect such extrinsic facts by proper colloquium with the particular words. Baker v. Warner, 231 U. S. 588, 34 S. Ct. 175, 58 L. Ed. 384; McClean v. Fowle, 15 Fed. Cas. No. 8,691; Kee v. Armstrong, Byrd & Co., 75 Okl. 84, 182 P. 494, 5 A. L. R. 1349; 37 C. J. p. 22, § 329.

"The office of the inducement is to narrate the extrinsic circumstances which, coupled with the language published, affect its construction, and render it actionable, where, standing alone and not thus explained, the language would appear either not to concern the plaintiff, or, if concerning him, not to affect him injuriously. This being the office of the inducement, it follows that if the language does not naturally and per se refer to the plaintiff, nor convey the meaning the plaintiff contends for, or if it is ambiguous and equivocal, and requires explanation by some extrinsic matters to show its relation to the plaintiff, making it actionable, the complaint must allege, by way of inducement, the existence of such extraneous matter. In many jurisdictions, however, there are now statutory provisions to the effect that it is not necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose, but that it is sufficient to state generally that the same was published or spoken concerning the plaintiff." 17 R. C. L. p. 393, § 147.

[4] On the other hand, no inducement or averment of extrinsic facts is necessary when the defamatory matter is actionable per se.

Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383, 385, 11 A. L. R. 1014; Furlong v. German-American Press Ass'n (Mo. Sup.) 189 S. W. 385, 388; 37 C. J. p. 22, § 329.

[5] In the light of the foregoing principles, was the publication in the instant case libelous per se? If we omit the language "which only goes to prove that P. T. Barnum's statement 50 years ago can be applied even at the present time," the publication is a criticism of the remedy, and it in no wise imputes fraud or dishonesty to any person. A publication which merely disparages goods or property by making accusations against the quality, purity or value of the same is not actionable per se. Victor Safe & Lock Co. v. Deright (C. C. A. 8) 147 F. 211, 8 Ann. Cas. 809; 36 C. J. p. 1169, § 39; 37 C. J. p. 130, § 594; 17 R. C. L. p. 455, § 217.

[6] Therefore, if the publication was libelous per se, it must be because of the reference to the statement of P. T. Barnum. Assuming that we may read into the publication what counsel for plaintiff claim Barnum said, so that it will read "which only goes to prove that P. T. Barnum's statement 50 years ago (the American people like to be humbugged) can be applied even at the present time," can it be said that the article, on its face and without the aid of extrinsic evidence, imputes to the plaintiff dishonest and fraudulent practices which would necessarily result in pecuniary loss and damage to the plaintiff? There is nothing in the article to show that such a corporation as the plaintiff exists, or that the plaintiff is engaged in the manufacture and sale of the remedy, or that the formula therefor is a secret formula known only to the plaintiff. These facts are pleaded by way of inducement and are wholly extrinsic of the article. Could it be said that this article would impute dishonesty to the owner of a drug store who sold Bowman's Remedy? Manifestly not. The remedy might be worthless, and yet the dealer might be selling it in the utmost good faith. On the other hand, it might be argued with force that the person who manufactured it and knew its ingredients, assuming them to be as stated in the publication, could not possibly sell the same as a cure for contagious abortion, and do so in good faith. But it only appears from extrinsic facts that the plaintiff manufactures the remedy and knows its contents. We therefore conclude that, if we read Barnum's statement into the article, it cannot be said from the article, standing alone, without the aid of extrinsic facts and circumstances, that its pub-

lication would directly and necessarily result in pecuniary damage to the plaintiff.

Therefore the words complained of were not actionable per se.

[7] Where the words are not actionable per se, but become so by reason of some special damage occasioned by them, such special damage must be particularly averred. Dun v. Maier (C. C. A. 5) 82 F. 169, 172; Lanston Monotype Machine Co. v. Mergenthaler Linotype Co. (C. C. A. 2) 154 F. 42; Reporters' Ass'n of America v. Sun P. & P. Ass'n, 186 N. Y. 437, 79 N. E. 710, 712; Memphis Telephone Co. v. Cumberland T. & T. Co. (C. C. A. 6) 145 F. 904; Walker v. Tribune Co. (C. C.) 29 F. 827, 829; Pollard v. Lyon, 91 U. S. 225, 236, 237, 23 L. Ed. 308; Age-Herald Pub. Co. v. Waterman, 188 Ala. 272, 66 So. 16, 20, Ann. Cas. 1916E, 900; De Witt v. Scarlett, 113 Md. 47, 77 A. 271, 273; Reusch v. Roanoke Cold Storage Co., 91 Va. 534, 22 S. E. 358; Ledlie v. Wallen, 17 Mont. 150, 42 P. 289, 290; King v. Sun P. & P. Ass'n, 84 App. Div. 310, 82 N. Y. S. 787; Denney v. Northwestern Credit Ass'n, 55 Wash. 331, 104 P. 769, 771, 25 L. R. A. (N. S.) 1021; Odgers on Libel and Slander (5th Ed.) p. 383; 37 C. J. p. 36, § 358; Id. p. 37, § 360; Id. p. 38, § 362, Id. p. 134, § 609.

In Pollard v. Lyon, supra, the court said:

"Whenever proof of special damage is necessary to maintain an action of slander, the claim for the same must be set forth in the declaration, and it must appear that the special damage is the natural and proximate consequence of the words spoken, else the allegation will not entitle the plaintiff to recover. * * *

"Where the words are not in themselves actionable, * * * special damage must be alleged and proved in order to maintain the action. Hoag v. Hatch, 23 Conn. 590; Andres v. Koppenheafer, 3 S. & R. [Pa.] 256 [8 Am. Dec. 647] Buys v. Gillespie, 2 Johns. [N. Y.] 117 [3 Am. Dec. 404]. * * *

"In such a case, it is necessary that the declaration should set forth precisely *in what way* the special damage resulted from the speaking of the words. It is not sufficient to allege generally that the plaintiff has suffered *special damages,* or that the party has been put to great costs and expenses. Cook v. Cook, 100 Mass. 194."

In Denney v. Credit Ass'n, supra, the court said:

"When a loss of credit and business is charged, the names of the parties who have refused credit or withdrawn their custom must be set out specifically, or a state of facts alleged showing this to be impossible. If the words are not actionable per se, a direct traceable loss must be alleged. Otherwise the complaint is bad on demurrer."

The rule is laid down in Odgers on Libel and Slander (5th Ed.) p. 383, as follows:

"Special damage must always be explicitly claimed and particulars given on the pleadings. It must be alleged with certainty and precision. If the plaintiff relies on the loss of particular customers, he must set out their names in the statement of claim. If he relies on a diminution in the profits of his business, he must state on his pleading the fact that he has lost profits, shewing by figures how much he alleges he has lost."

[8] The term "special damages" as here used denotes pecuniary loss—actual loss which has, in fact, occurred. Pollard v. Lyon, supra; Ratcliffe v. Evans, 2 Q. B. 524, 528.

In Ratcliffe v. Evans, supra, the court said:

"Lest we should be led astray in such a matter by mere words, it is desirable to recollect that the term 'special damage,' which is found for centuries in the books, is not always used with reference to similar subject-matter, nor in the same context. At times (both in the law of tort and of contract) it is employed to denote that damage arising out of the special circumstances of the case which, if properly pleaded, may be superadded to the general damage which the law implies in every breach of contract and every infringement of an absolute right: See Ashby v. White, 2 Ld. Raym. 938. In all such cases the law presumes that *some* damage will flow in the ordinary course of things from the mere invasion of the plaintiff's rights, and calls it general damage. Special damage in such a context means the particular damage (beyond the general damage), which results from the particular circumstances of the case, and of the plaintiff's claim to be compensated, for which he ought to give warning in his pleadings in order that there may be no surprise at the trial. But where no actual and positive right (apart from the damage done) has been disturbed, it is the damage done that is the wrong; and the expression 'special damage,' when used of this damage, denotes the actual and temporal loss which has, in fact, occurred. Such damage is called variously in old authorities, 'express loss,' 'particular damage' (Cane v. Golding, Sty. 169); 'damage in fact,' 'special or particular cause of loss' (Law v. Harwood, Cro. Car. 140; Tasburgh v. Day, Cro. Jac. 484)."

Special damages are the natural, but not the necessary, result of the wrong, and do not follow by implication of law upon proof of the defamatory words. Craig v. Proctor, 229 Mass. 339, 118 N. E. 647, 648; Larsen v. Brooklyn Daily Eagle, 165 App. Div. 4, 150 N. Y. S. 464. General damages are those which the law presumes must actually, proximately, and necessarily result from the publication of the defamatory words. New York Evening Post Co. v. Chaloner (C. C. A. 2) 265 F. 204, 220; 36 C. J. p. 1151, Sec. 17. [9] There are two classes of cases in which special damages to a trade or business may be recovered: One, where there is a loss of individual customers; and the other, in exceptional cases, where there is a general loss of business.

Where the defendant has published a statement about the plaintiff's business which is reasonably likely to produce, and in the ordinary course of things does produce, a general loss of business, and where it is not possible for the plaintiff to specify the particular customers lost, special damages for general loss of custom may be recovered. Ratcliffe v. Evans, supra; Odgers on Libel and Slander (5th Ed.) 377–387; Fraser, Law of Libel and Slander (5th Ed.) 36, 77, 78.

In Ratcliffe v. Evans, supra, the court said:

"This was a case in which an action for a false and malicious publication about the trade and manufactures of the plaintiff was tried at the Chester assizes, with the result of a verdict for the plaintiff for £120. Judgment having been entered for the plaintiff for that sum and costs, the defendant appealed to this court for a new trial, or to enter a verdict for the defendant, on the ground, amongst others, that no special damage, such as was necessary to support the action, was proved at the trial. * * * The jury proceeded upon the view that the writing was a false statement purposely made about the manufactures of the plaintiff, which was intended to, and did in fact, cause him damage. The only proof at the trial of such damage consisted, however, of evidence of general loss of business without specific proof of the loss of any particular customers or orders, and the question we have to determine is, whether in such an action such general evidence of damage was admissible and sufficient. That an action will lie for written or oral falsehoods, not actionable per se nor even defamatory, where they are maliciously published, where they are calculated in the ordinary course of things to produce, and where they do produce, actual damage, is established law. Such an action is not one of libel or of slander, but an action on the case for damage willfully and intentionally done without just occasion or excuse, analogous to an action for slander of title. * * *

"The question to be decided does not depend on words, but is one of substance. In an action like the present, brought for a malicious falsehood intentionally published in a newspaper about the plaintiff's business —a falsehood which is not actionable as a personal libel, and which is not defamatory in itself—is evidence to shew that a general loss of business has been the direct and natural result admissible in evidence, and, if uncontradicted, sufficient to maintain the action? * * *

"From libels and slanders actionable per se, we pass to the case of slanders not actionable per se, where actual damage done is the very gist of the action. Many old authorities may be cited for the proposition that in such a case the actual loss must be proved specially and with certainty. * * * In that language of old pleaders which has seen its day, but which connoted more accuracy of legal thought than is produced by modern statements of claim—'damages in the "per quod," where the "per quod" is the gist of the action, should be shewn certainly and specially.' But such a doctrine as this was always subject to the qualification of good sense and of justice. Cases may here, as before, occur where a general loss of custom is the natural and direct result of the slander, and where it is not possible to specify particular instances of the loss. Hartley v. Herring, 8 T. R. 130, is probably a case of the kind. * * *

"The necessity of alleging and proving actual temporal loss with certainty and precision in all cases of the sort has been insisted upon for centuries: Lowe v. Harewood, W. Jones. 196; Cane v. Golding, Sty. 176; Tasburgh v. Day, supra; Evans v. Harlow, 5 Q. B. 624. But it is an ancient and established rule of pleading that the question of generality of pleading must depend on the general subject-matter: Janson v. Stuart, 1 T. R. 754; Lord Arlington v. Merricke, 2 Saund. 412, note 4; Grey v. Friar, 15 Q. B. 907; Westwood v. Cowne, 1 Stark. 172; Iveson v. Moore, 1 Ld. Raym. 486. In all actions accordingly on the case where the damage actually done is the gist of the action, the character of the acts themselves which produce the damage, and the circumstances under which these acts are

done, must regulate the degree of certainty and particularity with which the damage done ought to be stated and proved. As much certainty and particularity must be insisted on, both in pleading and proof of damage, as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage is done. To insist upon less would be to relax old and intelligible principles. To insist upon more would be the vainest pedantry. The rule to be laid down with regard to malicious falsehoods affecting property or trade is only an instance of the doctrines of good sense applicable to all that branch of actions on the case to which the class under discussion belongs. The nature and circumstances of the publication of the falsehood may accordingly require the admission of evidence of general loss of business as the natural and direct result produced, and perhaps intended to be produced.

"An instructive illustration, and one by which the present appeal is really covered, is furnished by the case of Hargrave v. Le Breton, 4 Burr. 2422, decided a century and a half ago. It was an example of slander of title at an auction. The allegation in the declaration was that divers persons who would have purchased at the auction left the place; but no particular persons were named. The objection that they were not specially mentioned was, as the report tells us, 'easily' answered. The answer given was that in the nature of the transaction it was impossible to specify names; that the injury complained of was in effect that the bidding at the auction had been prevented and stopped, and that everybody had gone away. It had, therefore, become impossible to tell with certainty who would have been bidders or purchasers if the auction had not been rendered abortive. This case shews, what sound judgment itself dictates, that in an action for falsehood producing damage to a man's trade, which in its very nature is intended or reasonably likely to produce, and which in the ordinary course of things does produce, a general loss of business, as distinct from the loss of this or that known customer, evidence of such general decline of business is admissible. In Hargrave v. Le Breton, supra, it was a falsehood openly promulgated to an auction. In the case before us to-day, it is a falsehood openly disseminated through the press—probably read, and possibly acted on, by persons of whom the plaintiff never heard. To refuse with reference to such a subject-matter to admit such general evidence would be to misunderstand and warp the meaning of old expressions; to depart from, and not to follow, old rules; and, in addition to all this, would involve an absolute denial of justice and of redress for the very mischief which was intended to be committed."

[10] It was therefore necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom.

It will be noted that the complaint, in paragraph numbered 11 thereof, alleges injury to the plaintiff's good name and business reputation, loss in its business and credit, and loss of gains and profits, with resulting damages, in the sum of $100,000. Counsel for plaintiff contend that this is a sufficient allegation of special damages. In support of their contention they quote from 37 C. J. p. 38, § 362, as follows:

"A petition declaring on a publication which, although not actionable per se, causes loss to plaintiff in his business or profession must allege the particular contracts, sales, employments, customers, patients, or clients, as the case may be, lost by reason of the publication. But it has been held that the rule is relaxed where the individuals may be supposed to be unknown to defendant, where it is impossible to specify them, or where they are so numerous as to excuse a specific description on the ground of inconvenience."

They claim the instant case falls within the exception to the general rule. In support of this exception, the authors of Corpus Juris cite one case only—Trenton Mutual Life & Fire Ins. Co. v. Perrine, 23 N. J. Law, 402, 57 Am. Dec. 400. In passing upon the sufficiency of the allegation of special damages, the court in that case said:

"The declaration charges, that, by means of the libel, many and divers persons have been prevented and hindered from insuring their lives, and also from insuring their property in the said company, and have de-

clined and refused to have any transactions with the said company in the way of their business, and that, by means of the premises, the receipts, gains, and profits of the plaintiffs, in their business, have been and are greatly lessened. The objection relied upon is, that the declaration should have stated by name what persons have refused to insure their lives and property in the company by reason of the libel, and from whom they would otherwise have received greater gains.

"The general rule certainly is, that where the plaintiff alleges, by way of special damage, the loss of customers in the way of his trade, or the refusal of friends and acquaintances to associate with him, or the loss of marriage, or the loss of service, the names of such customers or friends, or the name of the person with whom marriage would have been contracted, or service performed, must be stated. * * *

"But the rule is relaxed when the individuals may be supposed to be unknown to the plaintiff, or where it is impossible to specify them, or where they are so numerous as to excuse a specific description on the score of inconvenience. Hartley v. Hening, 8 Term R. 130; Hargrave v. Le Breton, 4 Burr. 2422; Westwood v. Cowne, 1 Stark. R. 172; 2 Saund. R. 411, note 4; 1 Stark. on Slan. (2d Ed.) 441."

[11] We are unable to agree with the contention that the plaintiff in any case may allege generally the loss of customers, and at the trial recover for the loss of particular customers, and if the holding of the court in Insurance Co. v. Perrine, supra, is that such recovery could be had under the allegations of the declaration in that case, we cannot agree with the doctrine therein announced. If the plaintiff predicates his action on the loss of particular customers and not on general loss of custom and is able to offer proof at the trial of the loss of such particular customers, he ought to be able, and should be required, to allege the names of such customers in his complaint. We are inclined to believe, however, that Insurance Co. v. Perrine, supra, like Ratcliffe v. Evans, supra, was one of those exceptional cases where general loss of custom may be recovered as special damages. Hargrave v. Le Breton, 4 Burr. 2422, and Hartley v. Hening, 8 T. R. 130, cited by the court in Insurance Co. v. Perrine, supra, were such cases. The instant case may be such a case, but the difficulty is that the allegations of the complaint do not sufficiently show it, nor do they show that plaintiff was seeking recovery for general loss of custom.

It will be noted that the declaration in Insurance Co. v. Perrine specifically alleged that many and divers persons refused to insure their lives and insure their property with the insurance company because of the libel complained of, and that as a result thereof, the receipts, gains and profits of the insurance company in its business, were greatly lessened. We do not think this was a sufficient allegation of special damages for general loss of business, but it was much more specific than the allegations of damages in the instant case.

[12] In the case at bar, the allegations of damages were clearly insufficient to admit proof and sustain a recovery for the loss of particular customers. The complaint did not allege the name of any particular person who withdrew or withheld his custom. They were likewise insufficient to admit proof and sustain a recovery for a general loss of business. The complaint did not allege a state of facts showing that it was impossible for plaintiff to allege and prove the loss of particular customers, it did not allege facts showing a general loss of business, and it did not allege facts showing that such diminution of profits was the direct and natural result of the publication. We therefore conclude that there was no sufficient allegation of special damages.

It follows that the ruling of the trial court was right, and the judgment is therefore affirmed.