FAIRYLAND AMUSEMENT COMPANY
et al., Plaintiffs,

v.

METROMEDIA, INC., d/b/a
KMBC–TV 9, Defendant.

No. 73 CV 634–W–1.

United States District Court,
W. D. Missouri, W. D.

May 24, 1976.

David E. Kinton, Kuraner, Dingman, Brockus, Kinton & Lowe, Darwin E. Johnson, Kansas City, Mo., for plaintiffs.

Donald W. Giffin, Howard F. Sachs, Frank B. W. McCollum, Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

I.

This is a defamation action involving a Probe Report broadcast by defendant KMBC–TV during the 6:00 and 10:00 p. m. news on May 31, 1973. The Report was part of a two part series on rape in the Kansas City area. The broadcast contained the following language on the frequency of rape in different areas of the city:

Rapes are also occurring, the police map shows, in somewhat greater numbers in and around *Fairyland,* Swope, Blue Valley and North Terrace Parks—and near the Wayne Minor Housing Project. [Emphasis added]

Plaintiffs, the owners and operators of Fairyland Park, also known as Fairyland Amusement Park, claim that the broadcast was defamatory as to them because it "imputed and charged plaintiffs of [sic] conducting their trade and business in an improper manner." They have pleaded several innuendos to explain the defamatory meaning which they insist was conveyed by the broadcast. These innuendos state that the broadcast could be understood to mean:

(a) That rapes had been committed in the past in and around the premises of plaintiffs' trade and business at Fairyland Park and that during 1972 there was an increase in the number of rapes committed in and around plaintiffs' place of business at Fairyland Park.

(b) That plaintiffs had been negligent and were becoming more negligent in providing adequate security and safety for patrons of their place of business.

(c) That plaintiff's place of business was a dangerous place and was becoming a more dangerous place for the public at large and women in particular, and that people patronizing plaintiffs' place of business did so at increasing risk.

(d) That rapes were occurring in and around Fairyland Park in greater numbers than were occurring in the central city area.

The plaintiffs in this action include Fairyland Amusement Company, Funland Amusement Co., Inc., and B & B Rides, Inc., corporations organized under the laws of Missouri. Several individual plaintiffs who are owners of concessions at Fairyland Park have also joined in the action. They include Vincent and Maria Accurso, partners in Mr. Jack's Games and Novelties, Salvatore F. and Nathaniel J. Brancato, partners in Fairyland Novelty Company, Salvatore F. Brancato, doing business as Wonderland, and Marion and Josephine Brancato, partners in M & J Rides Concessions.

In an earlier order entered in this case, the Court determined that under Missouri law the alleged defamatory matter was not actionable *per se,* either as libel or slander. See *Brown v. Kitterman,* 443 S.W.2d 146 (Mo.1969); *Langworthy v. Pulitzer Publishing Co.,* 368 S.W.2d 385 (Mo.1963). Since plaintiff had failed to allege special damages with the required specificity under Rule 9(g), Fed.R.Civ.P., the Court dismissed the complaint and granted plaintiffs leave to amend once again. See *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, Inc.,* 17 F.2d 255, 261 (8th Cir. 1926); *Johnson v. American Mutual Liability Insurance Co.,* 335 F.Supp. 390, 395 (W.D.Mo. 1971). Plaintiffs have now submitted a second amended complaint in three counts alleging causes of action for slander, libel and negligence.

The special damage allegation in the second amended complaint states that because of the nature of plaintiffs' business "plaintiffs do not have the need or necessity to know the names of their individual customers at Fairyland Park, and do not, in fact, know the names of their individual customers at Fairyland Park, and cannot, therefore, allege the names of the particular customers who have withheld their patronage as a result of said defamation." Plaintiffs then attempt to set forth a special damage claim on the basis of comparative sales for each plaintiff. Plaintiffs compare their gross sales for the period May 31, 1972 to August 21, 1972, with the gross sales for the period May 31, 1973, the date of the alleged defamation, to August 21, 1973. The specific losses alleged are as follows:

| | | |
|---|---|---:|
| (a) | Fairyland Amusement Company | $ 39,307.75 |
| (b) | Funland Amusement Co., Inc. | |
| | Ride concessions | 12,627.18 |
| | Food concessions | 13,679.54 |
| (c) | B & B Rides, Inc. | 7,609.63 |
| (d) | M & J Rides Concessions | 27,902.02 |
| (e) | Mr. Jack's Games & Novelties | 3,068.63 |
| (f) | Salvatore F. Brancato and Nathaniel J. Brancato, d/b/a Fairyland Novelty Company | 1,524.36 |
| (g) | Salvatore F. Brancato, d/b/a Wonderland | 3,164.78 |
| | Total | $108,883.89 |

On the basis of these figures the plaintiffs compute actual damages from the decrease in the amount of profit between 1972 and 1973.

Defendant Metromedia, Inc. has now filed a motion to dismiss or for summary judgment. Defendant predicates this motion primarily on the grounds that (1) plaintiffs have still failed to allege special damages with the requisite specificity and (2) defendant is entitled to summary judgment on the basis of the qualified constitutional privilege which is accorded to the news media. The latter argument is based on defendant's contention that Missouri courts will continue to follow the so-called "public issue" doctrine of *Rosenbloom v. Metromedia,* 403 U.S. 29, 43–44, 91 S.Ct. 1811, 1819–20, 29 L.Ed.2d 296, 311–312 (1971), requiring proof of malice in this action, even though the Supreme Court apparently rejected this approach to defamation actions in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Defendant also incorporates by reference the legal arguments presented in its first motion for summary judgment. Among the contentions advanced there was defendant's assertion that, as a matter of law, the Rape Probe Report is not defamatory of any plaintiff. Plaintiffs oppose defendant's motion in all respects.

## II.

The special damages question must be examined first because a determination on that issue may make it unnecessary to reach any constitutional questions. Plaintiffs claim that their "before and after" comparison of sales constitutes a sufficiently specific claim of special damages under Rule 9(g), Fed.R.Civ.P. Both sides recognize that *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, supra,* correctly states the applicable law, both in this Circuit and in Missouri. The parties differ, however, in their application of the special damage criteria set forth in that case. The specific criteria are stated in the following language:

> It was therefore necessary for the plaintiff to allege either the·loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom. [17 F.2d at 261]

While plaintiffs claim that their method of alleging special damages is clearly sufficient under the above language, defendant calls attention to two glaring deficiencies which we find persuasive.

First, plaintiffs have not alleged any "facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom." Plaintiffs state that due to the nature of their business, they do not know the names of their customers, and therefore they cannot be expected to name the individual customers lost by reason of the alleged defamation. However, at another point in their complaint plaintiffs state that they hold special events, such as "WHB [radio] days." Presumably these special events are at least co-sponsored by some other organization. Plaintiffs have not suggested any valid reason why it is impossible to name at least some individual sponsors who may have allegedly cancelled their annual event on the basis of the Rape Probe Report broadcast by defendant.

Moreover, even assuming that plaintiffs have alleged facts sufficient to allow them to prove mere loss of business generally, they have wholly failed to allege any "facts showing that such loss in sales were the natural and probable result of such publication." Plaintiffs merely assert that "other than the defamation of which plain-

tiffs complain, there existed no factors or circumstances giving rise or contributing to loss of sales during June, July, and August of 1973, which were not also present during June, July, and August of 1972." We find and conclude that this allegation is clearly insufficient under *Erick Bowman Remedy Co., supra.* No *facts* were alleged which would tend to support plaintiffs' claim that the loss in business was a direct result of defendant's Probe Report referring to Fairyland Park.[1] See *Fowler v. Curtis Publishing Co.,* 86 U.S.App.D.C. 349, 182 F.2d 377, 379 (1950); *Golden Palace, Inc. v. National Broadcasting Co., Inc.,* 386 F.Supp. 107 (D.D.C.1974); *Bose Corporation v. Consumers Union,* 57 F.R.D. 528 (D.Mass.1973); but see *Continental Nut Co. v. Robert L. Berner Co.,* 345 F.2d 395, 397 (7th Cir. 1965).

### III.

■ Having determined that plaintiffs' second amended complaint must be dismissed for failure to plead special damages with sufficient specificity, the Court must now decide whether leave to file a third amended complaint should be granted. Ordinarily, the Court should grant plaintiffs leave to amend when dismissing a complaint for failure to state a claim on which relief can be granted. See 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 at 611–14 (1969). However, where it appears certain that plaintiffs will not be able to recover, as a matter of law, under any set of facts proved, leave to amend may and should be refused. *Id.* The Court has already allowed two amendments in this case. Any further amendment to permit plaintiffs to more specifically plead special damages appears futile.

1. Plaintiffs' general and conclusory pleading may have been designed to attempt to avoid the obvious complications which plaintiff would have been faced with in attempting to explain the impact of the competition presented in plaintiffs' 1973 season by "Worlds of Fun," a mammoth theme amusement park recently opened in the Kansas City metropolitan area. Worlds of Fun did not officially open until May of 1973. *Kansas City Star,* May 27, 1973. The amount of plaintiffs' business in the 1973 season would have undoubtedly been affected by the entry of this new competitor.

Moreover, defendant has moved for summary judgment here and has incorporated all the grounds included in its prior motion for summary judgment which was not ruled by the Court. That motion was based on a stipulation of facts filed by the parties. One of the grounds for the earlier motion was that, as a matter of law, the broadcast involved here is not defamatory as to any particular plaintiff. We find and conclude that no issue of material fact prevents decision on summary judgment and that, under Missouri law, the Rape Probe Report is not defamatory.

The broadcast in question did not specifically name any of the plaintiffs in this action. Rather, it referred solely to Fairyland Park. Plaintiffs claim, however, that "all of the business operations conducted by the respective plaintiffs at Fairyland Park are conducted under the name of 'Fairyland Park,' and the success of each of the plaintiffs in such business operation is substantially dependent upon maintaining the good public reputation of Fairyland Park." The law of defamation requires a much more direct connection between the defamatory statement and the person whose reputation is thereby harmed.

In *Brown v. Kitterman, supra,* the Supreme Court of Missouri was confronted with a similar case where the manager of a Community Center claimed that she was defamed by a letter written about the Center by the mayor of the town in which the center was located. One portion of the letter referred to immoral or illegal activities at the center:

> One of the VISTA workers proposed that we should legalize prostitution in a

We do not deem it necessary to take judicial notice of the opening of Worlds of Fun in 1973 for the purposes of ruling the pending motions. See Federal Rules of Evidence 201. However, we do believe that this circumstance graphically demonstrates the reason why the applicable law requires that facts supporting plaintiff's theory of causation must be pleaded in any case where mere loss of business is used to satisfy the special damages requirement.

high school class in Ellsinore, the same worker has had considerable to do with the setting up and management of the center. We have had two school girls reported to be pregnant, another has been forceable [sic] assaulted. On two different occasions we have heard from our homes girls hollow [sic] out and a car door slam, the car takes off then all is quiet. To me this all adds up to social problems that are not being solved. [443 S.W.2d at 150].

Plaintiff pleaded the following innuendo which states the defamatory meaning ascribed to the above-mentioned part of the letter:

Meaning that the above class and character of activities are being promoted and encouraged at the Community Center by Melba Brown, plaintiff. [*Id.*]

In affirming the trial court's dismissal for failure to state a claim of defamation, the Supreme Court of Missouri stated the following with regard to the above-quoted portion of the mayor's letter:

The third excerpt contains statements, concerning "one of the VISTA workers," "school girls" and "social problems that are not being solved." Plaintiff does not allege that she was the "VISTA worker" or one of the "school girls." Plaintiff's position seems to be the statement was defamatory of her because the meaning of the words was that she "promoted and encouraged" the activities referred to. The statement does not say that, and it is only by extrinsic facts that such a meaning could be brought about. However, plaintiff does not allege any extrinsic facts, except possibly that she was the manager of the community center. Instead she simply sets forth, presumably by way of an innuendo, a claimed meaning of the words, not supported by the words themselves, and not supported by extrinsic facts. We find nothing defamatory in the words constituting the third excerpt. [*Id.* at 151]

In addition, the Court found nothing defamatory of plaintiff in the other parts of the mayor's letter which suggested that the Community Center was not being operated properly.

■ Under the *Brown* reasoning, the individual plaintiffs in this case cannot claim any harm to *their* reputation by the alleged defamatory broadcast referring to Fairyland Park. Even assuming that the communication caused some loss of business to Fairyland generally, and the individual owners in particular, the individual plaintiffs here are not so publicly associated with Fairyland that the communication could be said to affect their reputations in the community. The pleaded innuendos attempt to assert a forced construction not admitted by the broadcast itself. We find and conclude that the defendant's Rape Probe Report contained nothing defamatory of the individual plaintiffs in this case.

■ With respect to the corporate plaintiffs, Fairyland Amusement Co., Funland Amusement Co., Inc. and B & B Rides, Inc., we find a similar lack of anything defamatory of these businesses. Even assuming that all of these corporations are associated in the public mind with the generic term "Fairyland Park," the statements contained in the Rape Probe Report are not defamatory, despite the meaning ascribed to them by plaintiffs. A mere report of immoral or illegal activities "in and around" the premises cannot be fairly interpreted to mean that the business either negligently or purposefully encourages or acquiesces in such conduct. Cf. *Gwinn v. Washington Post Co.*, 93 U.S.App.D.C. 378, 211 F.2d 641 (1954). In order to harm the reputation of a corporation the communication must cast aspersions on its honesty, credit, or manner of doing business. W. Prosser, *Law of Torts,* § 111 at 745 (4th Ed. 1971). See *Nordlund v. Consolidated Electric Co-Operatives, supra.* Here, the Rape Probe Report did not cast any aspersion on the integrity or manner in which the corporate plaintiffs conduct their business. It did not suggest, for example, that they were insolvent, *Minter v. Bradstreet Co.,* 174 Mo. 444, 73 S.W. 668 (1903); that they were cheating their customers, *Noeninger v. Vogt,* 88 Mo. 589 (1886); or that they were guilty of racial

 

discrimination. Since no extrinsic facts are pleaded which would support plaintiff's claimed interpretation of the broadcast, we find and conclude that the complaint fails to state a claim for defamation, either as libel, as alleged in Count II, or as slander, as alleged in Count I. *Brown v. Kitterman, supra.*[2]

Accordingly, and for the reasons stated, it is

ORDERED (1) that defendant's motion to dismiss should be and the same is hereby granted. It is further

ORDERED (2) that, independently, and in the alternative, defendant's motion for summary judgment should be and the same is hereby granted. The Clerk shall enter an appropriate judgment for the defendant.

2. Neither do Counts I and II of the complaint state a claim for product disparagement. See *National Refining Co. v. Benzo Gas Motor Fuel Co.,* 20 F.2d 763 (8th Cir.), *cert. den.,* 275 U.S. 570, 48 S.Ct. 157, 72 L.Ed. 431 (1927). See, generally, Note, *Corporate Defamation and Product Disparagement: Narrowing the Analogy to Personal Defamation,* 75 Columbia L.Rev. 963, 968–72 (1975).

In Count III plaintiffs attempt to state a claim for negligence. Negligence is merely the mini-

mum standard of liability in defamation cases where plaintiff is neither a public figure nor a public official. *Gertz v. Robert Welch, Inc., supra.* Since the broadcast is not defamatory as a matter of law, negligence alone does not support any claim for relief, and therefore Count III should be dismissed along with plaintiffs' other claims of libel and slander. *Golden Palace, Inc. v. National Broadcasting Co., Inc., supra,* at 110.