DEN NORSKE AMERIEKALINJE ACTIESSELSKABET, Appellant, *v.* SUN PRINTING AND PUBLISHING ASSOCIATION et al., Respondents.

Libel — damages — when the reasonable expense of publishing denials of the truth of a libelous article to minimize its effect may be alleged and upon sufficient proof thereof and of the libel be recovered — erroneous decision striking such allegations from the complaint in an action for libel.

1. One who has been injured either in his person or property by the wrongful act or default of another, not involving intentional injury to or invasion of the rights of person or property, is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury, and if he does not make such reasonable effort he will be debarred from recovering for those additional damages which result from such failure.

2. It is a corollary to this rule of duty not only that the injured party who makes a successful effort to avoid or reduce damages will be allowed to recover the expenses necessarily incurred in so doing, but also that he will be allowed to recover the expenses of a proper effort even though it proves unsuccessful. The effort must be made in good faith, it must be conducted with reasonable skill, prudence and efficiency, it must be reasonably warranted by and proportioned to the injury and consequences to be averted, and it must be made under a belief reasonably justified that it will avoid or reduce the damages otherwise to be apprehended from the wrong complained of.

3. The party injured by a libelous article should be allowed at the risk of the wrongdoer, although not compelled, to attempt by a

1

reasonable and proper. effort to prevent damages liable to result from the wrongful act which has been committed against him.   One who publishes an article concerning a corporation which so seriously impugns its methods of business that damages will be presumed should be held chargeable with the expense of a proper effort to avert them.                                           ·

4. In this action for libel plaintiff is seeking to recover as part of its damages certain expenses incurred in publishing denials of the truth of the offending article for the purpose of averting and minimizing its damages.   On motion these allegations were stricken out of the complaint as irrelevant on the theory that plaintiff could not recover such damages.   Assuming for the purposes of this appeal, without deciding, that the article is libelous *per se*, a jury might be allowed to say that the acts alleged to have been performed by plaintiff constituted a proper, reasonable and permissible effort to offset the harm and avert the damages threatened by defendants' alleged wrongful act.

*Den Norske Ameriekalinje Actiesselskabet* v. *Sun P. & P. Assn.*, 183 App. Div. 890, reversed.

(Argued January 6, 1919; decided March 4, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 15, 1918, which affirmed an order of Special Term granting a motion to strike from the complaint certain allegations as irrelevant.

The following question was certified: "Was the following portion of paragraph eleventh of the complaint herein, viz., ' and in order to minimize the damage and injury to its reputation and credit, plaintiff was obliged to and did cause denials of such false and defamatory statements to be made in newspapers published and circulated. in the city of New York, and elsewhere throughout the United States, at an expense of $2,722, which it was obliged to and did pay,' properly stricken therefrom on the ground that the same is irrelevant? "

The nature of the action and the facts, so far as material, are stated in the opinion.

*Emilie M. Bullowa* and *Ferdinand E. M. Bullowa* for appellant.   The libel complained of was of a kind that threatened continuing damage, so that it was not only

plaintiff's lawful right but its duty to use all reasonable and proper means to arrest the disaster, and minimize its damages. (*Lyons* v. *Erie R. R. Co.*, 57 N. Y. 489; *Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 77.) The plaintiff is entitled to recover the money expended in endeavoring to minimize its damages in accordance with the duty imposed upon it. (13 Cyc. of Pl. & Pr. 78; Odgers on Libel & Slander [5th ed.], 407; *Peak* v. *Oldham*, Cowp. 275; *Comstock* v. *N. Y. C. & H. R. R. R. Co.*, 48 Hun, 225; *Jutte* v. *Hughes*, 67 N. Y. 267.) To prove the expenditures as special damages, they were properly and necessarily alleged in the complaint, and the allegation thereof should not have been stricken out. (*Bergman* v. *Jones*, 94 N. Y. 51; *Jockin* v. *Brassler*, 114 App. Div. 177; *Heymeyer* v. *Harper's Weekly*, 170 App. Div. 459; *Cassidy* v. *Brooklyn Daily Eagle*, 138 N. Y. 239.)

*Macdonald De Witt* for respondents. The allegation stricken from the complaint is clearly irrelevant. (*Terwilliger* v. *Wands*, 17 N. Y. 54; *King* v. *Sun P. & P. Assn.*, 84 App. Div. 310; 179 N. Y. 600; Odgers on Libel & Slander [5th ed.], 382, 406, 407; 1 Sutherland on Damages [4th ed.], 311–325, §§ 88–90; *Wuensch* v. *Morning Journal Assn.*, 4 App. Div. 110; *Osterheld* v. *Star Co.*, 146 App. Div. 388; *De Severinus* v. *Press Pub. Co.*, 147 App. Div. 161; *Turton* v. *N. Y. Recorder Co.*, 144 N. Y. 144; *Bird* v. *Press Pub. Co.*, 154 App. Div. 491; *Stokes* v. *Morning Journal Assn.*, 72 App. Div. 184; *Palmer* v. *N. Y. News Pub. Co.*, 31 App. Div. 210.)

HISCOCK, Ch. J. In this action for libel plaintiff has alleged and is seeking to recover as part of its damages certain expenses incurred in publishing denials of the truth of the offending article for the purpose of averting and minimizing its damages. On motion these allegations were stricken out of the complaint as irrelevant on the theory that plaintiff could not recover such damages

and the question now presented to us by certification is whether this should have been done. It is essential to an intelligent discussion of the question to state the facts presenting it as they are set out in the complaint.

Plaintiff is a corporation created by and existing under the laws of the Kingdom of Norway. On July 7, 1917, and for some time prior thereto it had been engaged in operating a line of steamers between New York and Norway which carried both passengers and freight and it "had an established credit and achieved a reputation and good name, and high esteem for honesty, integrity and ability in the conduct of its said business and in the carrying out of its obligations and agreements." On the date mentioned one of its steamers sailed from New York for Norway carrying a large list of passengers and a large amount of freight. It went ashore near Cape Race on July 15th and was compelled to call for the assistance of a wrecking ship.

At this time the defendants were engaged in publishing a newspaper which was in general circulation throughout the city of New York and elsewhere and on August 6th, 1917, they, as alleged, "falsely and maliciously composed and published and caused to be published concerning the plaintiff, in said newspaper" the offending article which read as follows:

"WRECK WORKS A SEA CHANGE
"'CARGO OF GRAIN' TRANSMUTED
"INTO COPPER AND LEAD
"ON A SCANDINAVIAN LINER
"Craft Went Ashore near Cape Race
on July 15.

"The wrecking ship Rescue, which returned today from Newfoundland waters, reported that the wrecked steamship Kristianiafjord, when grounded seven miles west of Cape Race, on July 15, was found to be heavily laden with copper and lead.

" The wreckers said that they assisted in taking from the hold of the stranded vessel a 15,000 ton cargo of boxes, containing principally ingots of copper and bars of lead.  The metal had been securely cased.

" The Kristianiafjord, the greatest of Scandinavian merchantmen, belonging to the Norwegian-American Line (meaning the plaintiff) sailed from New York, July 7 with 1200 passengers, one of the biggest passenger lists of war times, and ' a great cargo of general merchandise, including a vast quantity of grain,' as ship news reported at the time.

" A few days later she arrived at Halifax and the British overhauled her.  Among her passengers were several Germans who until recently had been attached to the Swiss Legation in Washington, including Heinrich Schaffhausen, Count von Bernstorff's right hand man.

" By what process a cargo ' principally of grain ' was transmuted into one principally of copper and lead the crew of the Rescue did not attempt to say." ·

All of this article is asserted to have been false except certain statements therein which are immaterial in this discussion and it is claimed in substance that the fair meaning intended to be and actually conveyed by it was that the plaintiff fraudulently and illegally misrepresented the nature of the cargo contained in its ship by falsifying the manifest and other documents and that it was engaged in violating the laws of this country by conveying under circumstances of concealment and misrepresentation a large supply of copper to Norway, whence it could be easily transported to the Central Powers with which we were then at war, and which in accordance with general knowledge were much in need of said material.  Then follow the allegations drawn in question on this appeal that on failure of defendants to retract said article as immediately demanded " and in order to minimize the damage and injury to its reputation and credit, plaintiff was obliged to and did cause· denials

of such false and defamatory statements to be made in newspapers published and circulated in the city of New York and elsewhere throughout the United States, at an expense of $2,722, which it was obliged to and did pay."

In considering the question whether plaintiff might attempt to prevent damages which it is claimed would probably accrue as the result of the offending article by publishing advertised denials of its truthfulness, we encounter at the outset the inquiry whether the article was essentially and necessarily libelous and injurious, we being compelled of course to interpret it as it now stands without denial. The complaint alleges no item of special damages unless it be the one under discussion. Therefore, unless the article was of such a character as necessarily to import damages the complaint is demurrable and no basis would exist for incurring expenses to prevent damages neither alleged nor implied. If it were necessary at this time to decide that question we should be inclined to hold that at least a jury might give to the language employed a meaning which would make it accusatory of the commission by the plaintiff in its business of fraudulent, dishonest and unlawful acts and that under this construction it would be libelous *per se.*

It is now well settled in this state that a corporation may be the subject of an article which is libelous *per se.* Its " right to be protected against false and malicious statements, affecting its credit, or property, should be beyond question. There has been some dispute in the cases as to the necessity of setting out the specific damage, which a corporation claims to have suffered from a libelous publication;" but the better rule is " that such an averment is not necessary, when the language is of so defamatory a nature as to directly affect credit and to occasion pecuniary injury." (*Reporters Assn. of America* v. *Sun Printing & Pub. Assn.,* 186 N. Y. 437, 440.) And again in *Union Associated Press* v. *Heath* (49 App. Div. 247, 253), cited with approval in the fore-

going case, it is said: " It is now settled * * * that a corporation engaged in business may maintain an action for libel without proof of special damage where the language used concerning it is defamatory in itself and injuriously and directly affects its credit and necessarily and directly occasions pecuniary injury." (See, also, *N. Y. Bureau of Information* v. *Ridgway-Thayer Company*, 119 App. Div. 339, 342; reversed on dissenting opinion of INGRAHAM, J., 193 N. Y. 666.)

However, without attempting finally to decide that question, which it is stated on the brief will come before us on a demurrer, we think we should assume for the purposes of this appeal that the article is libelous *per se* within the authorities just quoted. The important question which we are considering must have been certified to us on that theory and under these circumstances we do not feel inclined to dismiss its consideration because of a decision of another question which at most is only indirectly before us and which is at least debatable. Thus we come to the main question.

The rule is of general and widespread application that one who has been injured either in his person or his property by the wrongful act or default of another is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury, and that if he does not make such reasonable effort he will be debarred from recovering for those additional damages which result from such failure. Familiar illustrations of this rule are found in the requirement that one who is threatened with damages as the result of a breach of a contract of employment must make a reasonable effort to find employment elsewhere (*Howard* v. *Daly*, 61 N. Y. 362; *Johnson* v. *Meeker*, 96 N. Y. 93, 97); that one whose property is threatened by the negligence of another, as by a defective sewer or sparks cast from a locomotive, must make proper efforts to stay the damages (*Toledo, Peoria & W. Ry. Co.* v. *Pindar*,

53 Ill. 447; *Van Pelt* v. *City of Davenport*, 42 Iowa, 313); that one whose person is injured by the carelessness of another must make a reasonable attempt to cure or mitigate the injury and stop the damages (*Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 77; *Pullman Palace Car Co.* v. *Bluhm*, 109 Ill. 20).

Then it is held as a natural corollary to this rule of duty not only that the injured party who makes a successful effort to avoid or reduce damages will be allowed to recover the expenses necessarily incurred in so doing, but also that he will be allowed to recover the expenses of a proper effort even though it proves unsuccessful. The scope of the effort and the limit upon the expenses for which he may recover, especially in the latter case, are naturally defined by different words in different cases. But from them all we think the general rule may be fairly deduced that the effort must be made in good faith, that it must be conducted with reasonable skill, prudence and efficiency, that it must be reasonably warranted by and proportioned to the injury and consequences to be averted, and that it must be made under a belief reasonably justified that it will avoid or reduce the damages otherwise to be apprehended from the wrong complained of. (*Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744, 753; *Wright* v. *Bank of the Metropolis*, 110 N. Y. 237; *Kelley, Maus & Co.* v. *La Crosse Carriage Co.*, 120 Wis. 84; *Van Pelt* v. *City of Davenport*, 42 Ia. 313, 314; *Sherman Center Town Co.* v. *Leonard*, 46 Kan. 354; *Davis* v. *Fish*, 1 Greene [Ia.], 406; *Pullman Palace Car Co.* v. *Bluhm*, 109 Ill. 20; *Beidler* v. *Sanitary Dist.*, 211 Ill. 639; *Toledo, P. & W. Ry. Co.* v. *Pindar*, 53 Ill. 447; *Watson* v. *Lisbon Bridge*, 14 Me. 201; *Ellis* v. *Hilton*, 78 Mich. 150.)

But these cases wherein and whereby the rule of duty has been established do not involve instances of intentional injury to or invasion of the rights of person or property. Although the act complained of was unlawful as in breach of contract, or negligent, it was not performed

with malicious or willful intent to injure, and a distinction very well may be drawn between the two classes of cases in respect of any duty which would rest upon the injured party. (*Athens Mfg. Co.* v. *Rucker,* 80 Ga. 291, 295; *Satterfield* v. *Rowan,* 83 Ga. 187, 190; *Galveston, H. & S. A. Ry. Co.* v. *Zeantzinger,* 92 Tex. 365, 370; *Steinmetz* v. *Kelly,* 72 Ind. 448.) The present libel is alleged to have been " falsely and maliciously composed and published," and as has been said we are compelled for present purposes to take these allegations as they are written. They may mean either actual malice or such malice as by legal fiction is presumed for the purpose of reconciling certain other rules in the law of libel. In either event, however, the element of malice is present in the alleged wrong and we are not inclined to hold that there was imposed upon the plaintiff an obligatory burden to endeavor to avert its injurious consequences. The defendants of course do not assert any such obligation.

We do not, however, regard duty and right as entirely correlative in such a case. We think that the injured party should be permitted to pursue the latter although he may not be driven by the former. Abundant reasons, in our opinion, support the conclusion that the injured party, at the risk of the wrongdoer, should be allowed, although not compelled, to attempt by a reasonable and proper effort to prevent damages liable to result from the wrongful act which has been committed against him. The alternative proposition is that the wrongdoer has the right to insist that the suffering party must sit still and allow damages to accumulate on the possibility that some time he may recover them. If the attempt is successful it is for the benefit of the wrongdoer and it is obvious that in securing the benefit of the effort he should pay the reasonable cost of it. (*Jones* v. *Morgan,* 90 N. Y. 4, 11.) The only chance for doubt would arise where the purpose failed and even then we think that if it is a proper one it should be at the risk and expense

of the wrongdoer. It is his improper act which has furnished the occasion and necessity for the effort, and he ought not to be allowed by too narrow or rigid rules to restrict the right of the one whom he has injured to seek to protect himself from harm and loss by an attempt which if it is successful will be for the benefit of the offender himself. Where a wrong has been committed under circumstances which include the element of intentional, willful and malicious injury, the author will be held responsible for the injuries which he has directly caused even though they be beyond the limit of natural and apprehended results, as established in cases where the injury was unintentional. (*Garrison* v. *Sun Printing & Pub. Assn.*, 207 N. Y. 1, 8.) One who publishes an article concerning a corporation which so seriously impugns its methods of business that damages will be presumed should, we think, be held chargeable with the expense of a proper effort to avert them. The two things are closely connected; one is an incident to the other. In an action for assault and battery the injured party is allowed to recover as part of his damages the expenses of medical treatment by which he seeks to cure his injuries and whereby, if successful, the damages are reduced. (*Smith* v. *Bagwell*, 19 Fla. 117; *Schmitt* v. *Kurrus*, 234 Ill. 578; *Pratt* v. *Hamilton*, 161 Mich. 258; *Rees* v. *Rasmussen*, [Sup. Ct. Neb.] 98 N. W. Rep. 830.) We are able to see no difference in principle between such an attempt in the case of a wanton physical injury, and one in such a case as this by proper methods to cure an injury to property and to minimize the damages threatened thereby.

This leaves as the only remaining inquiry the one whether a jury might be allowed to say that the acts alleged to have been performed by plaintiff constituted a proper, reasonable and permissible effort to offset the harm and avert the damages threatened by defendants' alleged wrongful act, within the rules which we have

already summarized in a case where a duty rests upon the injured party. We think they might.

We have the fact that the plaintiff was engaged in carrying passengers and freight to and from the city of New York and that prior to the article in question it enjoyed a good reputation for honest and efficient business conduct and management. The article complained of on the view we are now assuming directly impugned this reputation and course of business and was calculated to affect plaintiff's credit and business reputation and cause people to withdraw their patronage. So far as concerns damages the wrong and injury were not consummated and complete and " the harm done " at the moment the article was published, as is argued by respondents. The results and damages were apt to be just as continuing and continuous as those resulting from a tortious personal injury. The article was published and circulated in the city of New York and under these circumstances we think that a jury would be permitted to find that denials of the truthfulness of the allegations contained in the libelous article promptly published and circulated in the same city where the libel was circulated, and as we assume in proper language and with reasonable display, were calculated to reach the attention of those who otherwise might have been unfavorably affected by the original libel, prevent them from withdrawing their patronage and thus minimize plaintiff's loss. Of course we are dealing with general and rather indefinite allegations. The evidence offered under these may or may not tend to establish such an effort on the part of the plaintiff as will come within the rules adverted to. But reading the allegations as they now appear we think that they assert an effort which a jury might find to be a reasonable and promising one within the rules regulating such efforts as we have outlined them.

It was held in Massachusetts (*Ellis* v. *Brockton Pub. Co.*, 198 Mass. 538, 542), where the rule of punitive

damages does not prevail, that evidence of a full and prompt retraction is admissible for the purpose of reducing damages. It was written: " The publication of a retraction, complete in character and conspicuous in position, might be found to have a material effect in diminishing the mischief caused by the libel, and thus substantially reduce the damages sustained by the person libelled. The retraction was properly admitted in evidence quite apart from the statute." The case of *Turner* v. *Hearst* (115 Cal. 394, 402) seems to hold that evidence of a proper retraction may be given both for the purpose of rebutting the inference of malice and also as evidence tending to prove a decrease of the actual damages which without it plaintiff would have sustained.

While we are not accepting these decisions as establishing the rule in this state that evidence of a retraction may be given for the purpose of reducing compensatory damages — that question not being now before us — they do tend to support the proposition that publication of denials of the truthfulness of a libelous article under proper circumstances might be found by a jury to be a step or effort which was reasonably calculated to minimize the damages otherwise to be anticipated from such article. Denials by the libeled person might not have the same force as an admission of falsehood or mistake by the libeler himself, but we do not think it ought to be said as a matter of law that ones like those here alleged were not reasonably calculated to have some effect in the same direction.

For these reasons we think that the orders appealed from should be reversed, with costs in all courts, and that defendants' motion should be denied, with ten dollars costs, and the question certified answered in the negative.

CHASE, HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Orders reversed, etc.