**RIDGEVIEW PARTNERS,
LLC Plaintiff,**

v.

Maureen ENTWISTLE, individually and as Chairperson of the Town of Greenville Planning Board, Paul Ewanciw, Scott Reed, John Karecki, Allen Bobb, Leo McCarey, Cynthia Ewanciw Morse, individually and as Members of the Town of Greenville Planning Board, Michael Sussman, individually and as Special Counsel, The Town of Greenville Planning Board, The Town of Greenville, Defendants.

No. 01 CIV.10248I(SCR).

United States District Court,
S.D. New York.

Jan. 27, 2005.

James G. Sweeney, Goshen, NY, for Plaintiff.

John J. Walsh, Boeggeman, George, Hodges & Corde, P.C., Mark Seiden, Milber Makris Plousadis & Seiden, LLP, White Plains, NY, Michael Sussman, Law Offices of Michael H. Sussman, Goshen, NY, for Defendants.

*MEMORANDUM DECISION & ORDER*

ROBINSON, District Judge.

## I. Overview of the Motions

Plaintiff RidgeView Partners, L.L.C. ("RidgeView") brings a partial motion for summary judgment on the issue of liability and seeks to have the defendants' defenses of good faith / qualified immunity and the need to exhaust state court remedies stricken. Plaintiff also moves for a motion in limine. Defendants have filed a cross motion for summary judgment and a motion in limine. Defendant Michael Sussman has filed a cross motion for summary judgment and a motion to dismiss. Each motion and those that relate to it, as applicable, is considered independently in this order.

## II. Background

On January 24, 2001, RidgeView filed a subdivision/site plan application for the development of over 1,500 townhouses on 435 acres with the Defendant Town of Greenville Planning Board (the "Board"). RidgeView paid the application fee and supplied the escrow account initial fee as required under Town of Greenville Code ("Town Code") A212–6. At the behest of the Board, Mark Fellenzer (the "Engineer") review the application. In a February 2001 letter, the Engineer pointed out several deficiencies in the application. He considered the site a major subdivision because it included a plan for central water and sewer systems and road system. He concurred with RidgeView that it should complete another portion of the State Environmental Quality Review and prepare an Environmental Impact Statement. A Board meeting was held on March 12, 2001, to discus the application. At that meeting, RidgeView's counsel received a copy of the Engineer's February letter, and a workshop session and public hearing

were scheduled for March 26 and April 25, 2001, respectively.

On March 14, 2001, RidgeView's counsel reminded the Board that RidgeView "agreed to reimburse the Town for the reasonable amount of these ongoing costs" in reference to the costs of the "professionals" hired by the Town to review the proposal although RidgeView was not aware of any law requiring said agreement. RidgeView's counsel also objected to a "100% pass through of all costs to the developer, no matter what the amount or service is, I believe, illegal" and reserved the right to question all costs. RidgeView then stated it would deposit a reasonable sum at the outset of the review process and "replenish the fund from time to time upon being presented with evidence of the reasonable charges that are being charged against the fund."

The March 26, 2001, workshop session was cancelled by the Board and RidgeView was notified. On March 27, 2001, Ridge-View commenced a N.Y. CPLR Article 78 Proceeding ("Art. 78 proceeding") in New York State Supreme Court seeking an order to compel the board to hold the workshop session. Defendants filed an answer and other necessary documents. The Board also hired Mr. Michael Sussman to act as a facilitator and to make legal determination regarding issues presented by the proposal. Defendants claim Sussman was retained "at the consent of the plaintiff."

The Engineer, now formally retained by the Board, continued to review the application and sent a letter on April 10, 2001, regarding errors in the application. Sussman sent a letter on May 31, 2001, to RidgeView's counsel stating that the matter would not be voted on until the Supreme Court reached a decision on the Art. 78 proceeding but suggested that RidgeView meet informally with the Engineer to work out some of the issues. No

such meeting took place. Instead, Ridge-View withdrew its first application on July 2, 2001, and submitted a second site plan application for the same parcel of land with an increased number of dwelling units to be built to over 2,000 units. Accordingly, RidgeView sent a letter to the Supreme Court, copied to the Board, advising it had withdrawn its first application, and the Art. 78 proceeding was, therefore, moot.

On July 23, 2001, Sussman sent Ridge-View's counsel a letter stating the following "reasonably incurred expenses" were owed with regard to the first application: (1) Planner David Church—$400; (2) Planner Mark Fellinzer (the Engineer); and (3) Attorney Michael Sussman—$1500. Sussman then stated: "Assuming [Ridge-View's] payment of these incurred expenses, the Planning Board shall proceed to review [RidgeView's] new proposal at its August 20 meeting." In response, RidgeView's counsel offered no objection to paying for reasonable fees of consulting professionals incurred by the Board for both the first and second applications. However, he added a condition to payment—detailed statements or vouchers must be given to RidgeView. RidgeView objected to payment for legal fees related to the defense of the litigation. RidgeView further demanded that the matter be on the August meeting's agenda whether or not the payments were made by Ridge-View at that time.

The Engineer reviewed the second application and reported back to the Board on August 13, 2001, by letter that there were discrepancies and deficiencies. The Board asserts this letter proves the Board accepted the application for review. RidgeView disagrees. At the August 20, 2001, Board meeting, the application was not discussed at least partly, according to Defendants, because of the deficiencies of the second application which was deemed

incomplete. The Board Chairperson, Maureen Entwistle, later testified that Sussman advised her that the Board was not required to review the second application until the fees association with the first application were paid because the Board had not been advised by the Supreme Court that the Art. 78 proceeding had been discontinued. RidgeView filed the instant action on November 20, 2001.

## III. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Egineering Corp.,* 221 F.3d 293, 300 (2d Cir.2000); *see also* Fed.R.Civ.P. 56(c). The moving party must show the absence of any issues of material fact. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997).

## IV. Plaintiff's Motion for Partial Summary Judgment

Plaintiff RidgeView moves for partial summary judgment on the issue of liability of the Defendants. First, RidgeView claims the Board's refusal to receive and process RidgeView's second application was a denial of RidgeView's right to petition the Government under the First Amendment. Before addressing the legal issue as to whether RidgeView's First Amendment right to petition was violated, it must be established that the Board did indeed refuse to receive and process RidgeView's second application. Ridge-View claims that the Board refused to receive and process the second application. Defendants, however, maintain the Board accepted the second or amended application and began review of the application by offering the Engineer's August 13, 2001, letter. In that letter, the Engineer reviewed the second or amended application

for the Board in the same manner as he dealt with the first application. This is potentially evidence that the second application was accepted and review had begun. As opposing parties have produced evidence of this fact that is contradictory, it appears there may be a factual dispute.

■ Without a clear answer as to the factual question of whether the Board received and began processing of the second application, it is impossible for this Court to make any legal determinations that are dependent on that fact. RidgeView bases its various constitutional claims on the refusal of the Board to accept the second application. Consequently, if the Court were to find that the Board did receive the second application, then RidgeView's legal arguments, as they pose them, would be moot. Indeed, this factual question appears to be one of historical nature—the factual determination impacts the existence of the matter. It is reasonable that a fact finder could conclude based on the evidence that the Board accepted and began take action on the second application, or, alternatively, the Board took no action and refused to merely accept the application for processing. Such determinations are for the jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ This analysis applies also to RidgeView's claims that (1) the refusal of the Board to receive the second application because of the commencement and maintenance of its Art. 78 proceeding violates its right to free speech and to petition the government guaranteed to it by the First Amendment; (2) the Board's refusal to receive the second application is a violation of a protected property right, the delivery of fundamental governmental services, guaranteed to it under the Due Process Clause of the Fourteenth Amendment; (3) the Board did not proceed on RidgeView's

second application but did with other applicants having delinquent escrow accounts in violation of the Fourteenth Amendment on Equal Protection grounds; and (4) the Board imposed an impermissible unconstitutional condition on the exercise of its power and as such denied procedural due process to RidgeView in violation of the Fourteenth Amendment. For the foregoing reasons, the Court declines to rule on the legal implications of the above claims, because a genuine dispute over a material fact—whether the Board refused the second application—exists. This issue of fact is left for jury determination.

## V. Plaintiff's Motion to Strike Defendants' Immunity Defense

RidgeView moves to strike all of the defendants' affirmative defenses of good faith or qualified immunity. RidgeView claims that the Board should have been conducting ministerial acts under 6 NYCRR Part 617 and N.Y. Town Law 274–a in connection with receiving and processing the second application.[1] As stated above, a material factual dispute exists as to whether the Board accepted the second application for review. Nonetheless, a determination of the Board's legal obligations to receive and process the application can be made despite the aforementioned dispute.

Under NYCRR Part 617.6, ministerial act is a defined term. Ministerial act refers to "an action performed upon a given state of facts in a prescribed manner imposed by law without the exercise of any judgment or discretion as to the propriety of the act, such as the granting of a hunting or fishing license." 6 NYCRR § 617.2(w). The only instance in which ministerial duty is used in Part 617 is in the context of listing what actions are not

subject to review under the Part, such as "(19) official acts of a ministerial nature involving no exercise of discretion, including building permits and historic preservation permits where issuance is predicated solely on the applicant's compliance or noncompliance with the relevant local building or preservation code(s) . . . ." 6 NYCRR § 617.5.

Part 617 lists the granting of hunting and fishing licenses and certain building and historical preservation permits as example ministerial duties but does not specifically list receiving an application as a ministerial duty. This, of course, does not lead to an automatic assumption that receiving an application is not the exercise of a ministerial duty. That said, these types of tasks may be illustrative of what constitutes a ministerial duty under this Part and, therefore, be helpful to the Court. The listed ministerial duties involve the issuance of permits or licenses based solely on compliance or noncompliance with local law. They are simple matters. For example, the issuance of a fishing license differs from receiving and processing a site plan application. Under Part 617.6, the initial review of the application alone involves (1) determining whether the action is subject to SEQR; (2) determining whether the action involves a federal agency; (3) determining whether the action may involve one or more other agencies; and (4) making a preliminary classification of an action as Type I or Unlisted. Based on the description of the initial review alone, processing the application involves discretion as to the propriety of the act. There is no question that this type of inquiry takes special knowledge and involves more than just local law. RidgeView points to N.Y.

---

1. RidgeView moves to strike the defense on the basis of both the receiving and processing of the application to be ministerial acts.

Therefore, the Court examines whether both of these functions as a whole constitute a ministerial duty.

Town Law 274–a. The Court finds this provision silent on the issue. The site plan review provision states that the authorization to approve site plans may be delegated by a town board to a planning board but makes no mention of the review process as being one of ministerial duty. Therefore, the Court declines to view the receipt and processing of a site plan application as a rubber-stamp process. Accordingly, the qualified immunity defense is not stricken on this basis.

RidgeView's second argument that the defendants should have known their actions violated RidgeView's First Amendment Rights thereby stripping defendants of their good faith immunity defense is not undertaken at this time as no legal determinations are made with respect to RidgeView's First Amendment claims because an issue of material fact is present.

## VI. Plaintiff's Motion to Strike Defendants' Exhaustion Defense

■ Defendants' assert RidgeView was bound to seek a state court writ of compulsory mandamus via N.Y. CPLR Art. 78 prior to commencing this action. RidgeView moves to strike this defense. RidgeView cites the Supreme Court's decision in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961): "It is no answer that the state has a law which if enforced would give relief. The federal remedy is supplemental to the state remedy, and the later need not be first sought and refused before the federal one is invoked." *Id.* at 183, 81 S.Ct. 473.

RidgeView accurately describes the law applied in this area. A more specific authority on the law of exhaustion of state remedies under § 1983 is *Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The Supreme Court held: Based on the legislative history[y] of... § 1983...; we conclude that exhaustion of state administrative remedies

should not be required as a prerequisite to bringing an action pursuant to § 1983. We decline to overturn our prior decisions holding that such exhaustion is not required. *Patsy,* 457 U.S. at 516, 102 S.Ct. 2557 (1982). The Supreme Court does not distinguish between deprivations of property interests versus liberty interests. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

■ However, no Due Process violation has occurred when a government employee deprives another of property or liberty when the government provides a meaningful postdeprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 531, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). "Parratt, Hudson and their progeny...emphasize that there is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 882 (2d Cir.1996) (citing *Zinermon v. Burch,* 494 U.S. at 132, 110 S.Ct. 975); *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer,* 468 U.S. at 531, 533, 104 S.Ct. 3194. "This rule applies to those claims that are appropriate for an Article 78 proceeding and the allegations are that state agencies have engaged in random and unauthorized acts. The rule does not apply when plaintiffs allege that statutory and administrative procedures that were properly followed are themselves unconstitutional." *Reyes v. Erickson,* 238 F.Supp.2d 632, 635 (S.D.N.Y.2003) (citing *John Gil Constr., Inc. v. Riverso,* 72 F.Supp.2d 242, 251 n. 13 (S.D.N.Y.1999)). At an Article 78 proceeding, due process and equal protection claims can be decided. *Reyes,* 238 F.Supp.2d at 636.

## VII. Defendants' Cross Motion for Summary Judgment and Plaintiff's Related Motion in Limine

Defendants' cross motion for summary judgment on legal claims also hinge on whether the Board refused to accept the second application. These issues, therefore, must be brought before a jury for a factual determination as discussed above.

Defendants also move for summary judgment on the basis that RidgeView refused its duty to mitigate damages, and, therefore, RidgeView's claims for damages have been forfeited. First, Defendants cite RidgeView's failure to pay the accrued expenses totaling less than $3,000 so the Board could continue review of the second application. Second, Defendants allegedly offered to continue review despite the outstanding fees in February of 2002, months after the instant litigation had begun—RidgeView refused.

Concurrently, RidgeView seeks a motion in limine under Fed.R.Evid. 103 to exclude any evidence about RidgeView's alleged duty to mitigate its damages. Specifically, RidgeView seeks to exclude two pieces of correspondence between the Town of Greenville's counsel, John Walsh, and RidgeView's counsel, James Sweeney, dated February 26 and 27 and March 1, 2002. In that correspondence, Walsh offered to review the second application despite the outstanding fees. Sweeney responded that RidgeView declined the offer to proceed with the application. Ridge-View seeks exclusion on the basis that RidgeView has no duty to mitigate, or, alternatively, assuming *arguendo* a duty to mitigate, the letters are not admissible as evidence of a failure to mitigate because they are an offer to compromise barred by Fed.R.Evid. 408.

First, the Court analyzes RidgeView's alleged duty to mitigate its damages. RidgeView claims that it has no duty to mitigate under New York law, because the duty is nonexistent in the context of the invasion of the rights of a person or property citing *Den Norske Ameriekalinje Actiesselskabet v. Sun Printing and Publishing Association et al.*, 226 N.Y. 1, 9, 122 N.E. 463 (1919). RidgeView correctly cites *Den Norske* as setting out the general duty to mitigate rule for New York 85 years ago: "The rule is of general and widespread application that one who has been injured either in his person or his property by the wrongful act or default of another is under an obligatory duty to make a reasonable effort to minimize the damages liable to result from such injury, and that if he does not make such reasonable effort he will be debarred from recovering for those additional damages which result from such failure." *Id.* at 7, 122 N.E. 463.

■ Defendants, on the other hand, argue that the *Den Norske* decision is inapplicable because, unlike in that case, the Board's conduct was exercised in good faith. The *Den Norske* court provided for an exception within the broad duty to mitigate damages for instances in which "the element of malice is present in the alleged wrong." *Id.* at 9, 122 N.E. 463. When malice is present, the court declined to hold the plaintiff liable for the "injurious consequences" of the defendant's actions—alleged libel in that instance. *Id.* The Court agrees that RidgeView has not offered convincing evidence of the Board's intentionally malicious actions or intent to injure. Whether or not RidgeView's various constitutional rights were violated by Defendants' actions, RidgeView failed to support its claim that, because of Defendants' intent to injure, it had no duty to mitigate. To be clear, the Court does not categorize Defendants' conduct in any way except to say it was not purposefully violative. RidgeView's attempt to label Defendants' actions as intentionally malicious

fails. Not meeting the *Den Norske* exception, RidgeView may carry the burden of mitigating its damages.

The social policy behind the duty to mitigate damages stems from the desire to hold defendants liable for harms they cause but not also for damages the plaintiff could have reasonably avoided. Such a policy encourages a plaintiff to react sensibly and cautiously to the harm imposed by the defendant. *East Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co.*, 490 F.2d 1234, 1239 (2d Cir.1973). Given the sound policy behind the doctrine of mitigating duties, the Court considers whether the policy has a place in this circumstance. RidgeView claims a large sum in damages stemming from the Board's alleged failure to review the site plan. It appears that RidgeView may have had an opportunity to have its application fully reviewed and processed by the Board in late February 2002 "absent payment...of expenses incurred on its prior application." The Board offered to place the matter on its early March meeting agenda. The Board noted that RidgeView's failure to agree would be "considered a failure to mitigate its damages." RidgeView declined to proceed with its application.

■ An underlying requirement in imposing the duty to mitigate, however, is that the defendant harmed the plaintiff and plaintiff subsequently suffered injury. "There can be no duty to mitigate damages until the injury causing those damages actually occurs." *Miller v. Lovett*, 879 F.2d 1066, 1070 (2d Cir.1989). The injury complained of in this case is that the Board's alleged refusal to accept, review, and process the second application violated RidgeView's various constitutional rights. No determination has been made as to whether RidgeView's injury did or did not occur. Again, without agreement on the basic fact as to whether the Board accepted the second application, the Court is unable to make judgments as a matter of law on issues stemming from that incident including the duty to mitigate damages. Once an injury has been established, the Court is prepared to decide if RidgeView had such an obligation. This situation is distinctive from a case in which an employee is terminated (the injury), and parties dispute the legality of that act. Here, the act itself (the acceptance of the second application) is not a fact in agreement between parties. In conclusion, a ruling on RidgeView's duty to mitigate in the summary judgment motion context would be inappropriate at this time.[2] Defendants' may continue with the duty to mitigate defense. The court, therefore, reserves judgment. Relatedly, RidgeView's motion in limine to preclude the duty to mitigate defense is premature and denied.

## VIII. Defendants' Motion in Limine

■ Defendants seek to preclude RidgeView from offering expert witness testimony and evidence at trial on the basis that RidgeView failed to timely produce expert reports pursuant to Fed. R.Civ.P. 37(c)(1). The Rule states: "A party that without substantial justification fails to disclose information required by Rule 26(a)... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 26(a)(2)(C) directs that the reports, unless otherwise stipulated or directed by the court, be disclosed at least 90 days before the trial date or the date the cases is to be ready for trial. Instead, Ridge-

---

**2.** Accordingly, the Court does not pass on whether the late February 2002 correspondence between counsel constitutes an inadmissible settlement offer under Fed.R.Evid. 408.

View first disclosed the names of its expert witnesses in the joint pre-trial order in an untimely manner. The trial was not held. At this point, no trial is currently scheduled. The requirement of disclosure within the time framework of Rule 26(a)(2)(C) is conditioned on the trial going forward. Because the trial did not take place 90 days later or on any day after that, the Defendants were not harmed by RidgeView's failure. If RidgeView maintains the same witnesses for a future trial, then Defendants have had ample time to prepare rebuttal witnesses. Finding Ridge-View's failure to disclose its expert witness list according to Rule 26(a)(2)(C) meets the harmless exception under Rule 37(c)(1), Defendants' motion in limine to preclude expert testimony and expert evidence is denied.

## IX. Defendant Sussman's Cross Motion for Summary Judgment

Michael Sussman, a defendant in this case and special counsel to the Board at the time of the dispute, filed a cross motion for summary judgment on the bases that Sussman: (1) never engaged in retaliation against RidgeView, (2) never violated RidgeView's equal protection rights, (3) never violated RidgeView's right to due process, (4) is entitled to qualified immunity, and (5) is entitled to reasonable costs and fees in defending this matter.

As with the other causes of action, only allegations involving the first application will be considered herein because a material fact is in genuine dispute. Accordingly, Sussman's second and third arguments are not entertained here. As for whether Sussman engaged in retaliation against RidgeView, the actions taken by Sussman surrounding solely the first application will be analyzed.

■■■ To establish a retaliation claim, a plaintiff initially must show that the First Amendment protects its conduct and the defendant's conduct was motivated or substantially caused by its exercise of free speech. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994); *Hampton Bays Connections, Inc. v. Duffy*, 127 F.Supp.2d 364, 372 (E.D.N.Y.2001).

The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. "The Supreme Court has described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988)(citing *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). The constitutional right of unfettered access to the courts is one aspect of the right to petition government for redress of grievances. *Id.* (citations omitted). RidgeView's right to file a lawsuit in state court is certainly protected behavior under the First Amendment.

Bald allegations of retaliation are insufficient to withstand a motion for summary judgment: "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Gagliardi*, 18 F.3d at 195.

■■■ Sussman did not become Special Counsel to the Board until late April 2001, after the Art. 78 proceeding had been filed and answered by the Town of Greenville. There is no evidence that Sussman was in any way involved in the Planning Board's decision not to proceed with the public hearing previously set for April 25, 2001. There is also no evidence whatsoever that Sussman held the first state lawsuit against the applicant or retaliated in any

manner for its filing. Indeed, by letter dated May 31, 2001, Sussman suggested to Sweeney that despite the lawsuit, Ridge-View's experts should meet with informally with the Engineer to work on reconciling their interpretation of regulations governing the build out of the site. Therefore, no causal connection has been shown between Sussman's actions and the review process of the first application. No evidence has been presented that Sussman's conduct was motivated or substantially caused by RidgeView's filing of the Art. 78 proceeding. Therefore, RidgeView's retaliation claim against Sussman is dismissed.

 Sussman argues for qualified immunity protection. When a public official violates no clearly established constitutional right and acts in all times in good faith and conformance with clearly established law, that official is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). An official with qualified immunity should not be required to expend time and money in defense of actions stemming from disputes with them in their official capacities. *Walentas v. Lipper*, 862 F.2d 414, 421–23(2d Cir.1988). In determining whether there was a clearly established constitutional right, "the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendant[s] should have known that the specific actions complained of violated the plaintiff's freedom of speech." *Knoeffler v. Town of Mamakating*, 87 F.Supp.2d 322, 329 (S.D.N.Y.2000) (quoting *Lewis v. Cowen*, 165 F.3d 154, 166–67 (2d Cir.1999)).

Sussman has qualified immunity if it was objectively reasonable for him to believe he was not violating RidgeView's First Amendment rights. This test enables courts to decide qualified immunity claims as a matter of law when there are no material issues of disputed fact. *Knoeffler v. Town of Mamakating*, 87 F.Supp.2d 322, 329 (S.D.N.Y.2000). Because Ridge-View's retaliation claim has been rejected and the other constitutional claims are not being considered herein, RidgeView has no constitutional claim remaining against Sussman. Consequently, at this juncture, it is unnecessary for this Court to conduct an extensive analysis as to whether Sussman has qualified immunity protection.

Finally, Sussman asserts he is entitled to reasonable costs and fees incurred in defending this matter. He argues Ridge-View has no credible basis for a suit against him, and the suit may be regarding as frivolous, an effort to embarrass him, and punish him for his campaign for local office. Given that the constitutional claims against Sussman are not taken up by the Court at this time, the Court cannot determine the credibility of RidgeView's claims against Sussman. Accordingly, no award of costs and fees can be made at this time.

In conclusion, Sussman's motion for summary judgment is granted in part on the claim of First Amendment retaliation and denied in part on all other claims, and judgment on the qualified immunity defense is reserved.

## X. Conclusion

The Court directs the Clerk of the Court to enter the following judgments: Plaintiff's motion for partial summary judgment on the issue of liability is denied. Plaintiff's motion to strike Defendants' immunity defense is denied. Defendants' cross motion for summary judgment is denied except the duty to mitigate damages defense for which judgment is reserved. Defendants may proceed with their duty to mitigate defense at this juncture. Relatedly, Plain-

tiff's motion in limine to preclude the duty to mitigate defense is denied. Defendants' motion in limine to preclude Plaintiff's expert witness testimony and evidence at trial is denied. Defendant Sussman's cross motion for summary judgment is granted on the First Amendment retaliation claim and the remaining claims are denied, and judgment on the qualified immunity defense is reserved.

IT IS SO ORDERED.