OPINION OF THE COURT
Joseph Gerace, J.
FACTS
On March 24, 1986, plaintiff purchased 14 transformers from defendant Ferranti-Packard and installed them in various locations in several public and business office buildings.
Three years later (July 31, 1989) an electrical fire occurred in one of the transformers located in the New York Telephone Building, causing extensive property damage.
On January 2, 1991, 18 months after the New York Telephone fire, a second transformer failed and caught fire in the Rath County Office Building in Buffalo, causing damage to an adjacent transformer as well.
None of the remaining 11 transformers was involved in or affected by the two fires. None had ever malfunctioned. After investigation, plaintiff determined these transformers were defective in the same way as those which caused the two fires.
Plaintiff thereupon replaced these transformers because in its judgment they presented a high, dangerous risk to significant numbers of people and property.
On July 29, 1992, six years after purchase, plaintiff commenced suit for the replacement costs for all 14 transformers, including the functioning 11, alleging grounds of negligence, strict products liability, and breach of warranty.
The Ferranti-Packard defendants moved to dismiss the breach of warranty claim on the ground the warranty was only for two years and had expired prior to the fires. They also moved to dismiss the causes of action seeking damages in the form of repair and replacement costs of the 11 functioning transformers, but have not moved against the causes of action for direct damages caused by two fires.
*609 Defendant Magnetek, Inc., has moved to dismiss for failure to state a cause of action. Defendant May & Christie, GMBH, manufacturer of component transformer parts, joins in the Ferranti-Packard motion.
THE WARRANTY ACTION
Defendants contend plaintiffs warranty action is untimely because it was commenced after expiration of its two-year warranty.
Plaintiff relies on UCC 2-725 (2) which provides a four-year Statute of Limitations "except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.”
The UCC four-year warranty may be limited by agreement of parties. It was expressly limited to two years in this case by the warranty of Ferranti-Packard that it "agrees to replace or repair any transformer failing during normal and proper use within two (2) years of the date of placing in service which shows defects of material or workmanship”.
The UCC 2-725 (2) exception applies only when future performance is warranted. The Ferranti-Packard warranty was only a repair and replacement warranty that did not extend to future performance.
The manufacturer did not warrant future performance. Therefore, the warranty action is untimely whether the UCC four-year limitation or the contractual two-year limit is applied.
The two cases cited by plaintiff, Mittasch v Seal Lock Burial Vault (42 AD2d 573) and Parzek v New England Log Homes (92 AD2d 954), are not applicable because those manufacturers specifically warranted future performance.
Numerous cases have held warranty claims similar to the instant case as untimely. (Heller v U. S. Suzuki Motors Corp., 64 NY2d 407; Shapiro v Long Is. Light. Co., 71 AD2d 671; Queensbury Union Free School Dist. v Walter Corp., 101 AD2d 992, affd 64 NY2d 964; Lewis v Axinn, 100 AD2d 617; Rissew v Yamaha Motor Co., 129 AD2d 94; Arell’s Fine Jewelers v Honeywell, Inc., 170 AD2d 1013.)
These cases denied claims made after the warranty period had expired on the grounds that a repair and replacement *610 warranty is a promise to repair and replace during the warranty period only. It is not a warranty that the goods will never fail. It does not extend the basic four-year warranty or any shorter time frame agreed to by the parties.
In the instant case, all the transformers functioned as expected by all parties during the two-year warranty period.
The courts have held the proper approach for knowledgeable parties in commercial transactions is to bargain for the protection they seek. Here, in its invitation to bid, the plaintiff could have insisted on a longer, stronger warranty.
Niagara Mohawk could have required a longer warranty period, stronger warranty language, or an extended warranty for future performance. It did not do so.
Niagara Mohawk cannot expect the court to provide the warranty it neglected to insist upon in the bidding process.
THE UNDAMAGED TRANSFORMERS
The Ferranti-Packard defendants claim that the complaint fails to state a cause of action as to the 11 undamaged transformers. In the negligence and products liability counts plaintiff alleges it had to replace these items: "to avoid the risk of any further damage to property and danger to persons, plaintiff was compelled to remove and replace the remaining network transformers * * * [as] unreasonably dangerous and defective.”
The cases cited by the parties are not exactly on point. Replacement in those cases was limited to replacement of products that were damaged or which had failed because of defects.
Moreover, the products in those cases involved defective cranes, walls and roofs which did not present a risk of harm as potentially massive and dangerous as the electrical transformers in this case.
Current case law distinguishes between products which fail to live up to expectations and products that are dangerously defective. The courts have permitted tort claims sued within three years of product failure or damage in cases involving dangerously defective products. (Schiavone Constr. Co. v Elgood Mayo Corp., 81 AD2d 221, revd 56 NY2d 667.)
Plaintiff contends the tort claim as to the undamaged transformers is appropriate as well as timely because it was brought within three years of the two fires, citing St. Mary’s *611 Protectress Ukranian Autocephalous Orthodox Church v Challenger Elec. Equip. Corp. (175 AD2d 589).
In that case, the court held the Statute of Limitations started to run when a hall was destroyed by a fire sparked by a defective heater. The case is not applicable here because it did not involve a damage claim for replacement of a functioning but potentially defective heater in another location.
To hold that a cause of action and the Statute of Limitations is triggered for the 11 undamaged, functioning transformers upon the malfunction and damage to three transformers at other locations would strain logic.
DAMAGES
There must be more than economic damages. There is no claim in tort solely for economic loss. (Arell’s Fine Jewelers v Honeywell, Inc., supra; Queensbury Union Free School Dist. v Walter Corp., supra; Hemming v Certainteed Corp., 97 AD2d 976; Ralston Purina Co. v McKee & Co., 158 AD2d 969; Antel Oldsmobile-Cadillac v Sirus Leasing Co., 101 AD2d 688; Cayuga Harvester v Allis-Chalmers Corp., 95 AD2d 5.)
Although there is evidence the 11 transformers might have proved to be dangerously defective, they had not malfunctioned as of the time of replacement. Thus, the only damage to plaintiff was the economic cost of replacement which it elected to undertake to avoid possible damage and liability.
Niagara Mohawk argues it does not seek to recover for economic loss. They attempt to distinguish between economic loss where a product does not live up to expectations, and physical damage due to a dangerously defective product.
However, neither loss has occurred here. The 11 transformers were operating up to expectations at the time they were removed. They were not at the locations where the fires took place. They did not cause any damage nor were they damaged at the time of replacement.
The only loss plaintiff suffered as to these 11 transformers was the cost of replacement which is an economic loss.
Plaintiff relies heavily on Dudley Constr. v Drott Mfg. Co. (66 AD2d 368). However, that case involved recovery of damages from physical injury to the product which was caused by the defect in the product.
Niagara Mohawk cannot point to any direct damage to the 11 transformers which were operating according to expectations.
*612 Plaintiff also cites Trustees of Columbia Univ. v Mitchell/Giurgola Assocs. (109 AD2d 449) as authority for the proposition that an accident is not a prerequisite to recovery. However, that case involved a defect in an exterior "curtain wall” to which tiles had been attached. The plaintiff took emergency safety measures because the "wall was in imminent danger of collapse.” (Supra, at 450.)
It was a certainty in the Columbia case (supra) that if plaintiffs had not acted, the wall would have collapsed.
That is not the situation here. The transformers were not in imminent danger of failure. They had functioned as expected for years until they were removed. One could only speculate on whether they would ever have failed and caused damage or injury if they had not been replaced.
While it can be said that these 11 transformers were inherently or potentially dangerous, there has been no damage to property or persons. (See, East Riv. S. S. Corp. v Transamerica Delaval, 476 US 858; Seely v White Motor Co., 63 Cal 2d 9, 403 P2d 145.)
MITIGATION OF DAMAGES
Plaintiff argues that its costs of replacement should be allowed as mitigation damages, citing Den Norske Ameriekalinje Actiesselskabet v Sun Print. & Publ. Assn. (226 NY 1, 8), which held that such damages: "must be reasonably warranted by and proportioned to the injury and consequences to be averted.”
Niagara Mohawk also relies on Sorkin v Lee (78 AD2d 180), which holds that causation and mitigation are usually fact issues to be decided by a jury.
However, here, Niagara Mohawk has undertaken risk avoidance and not damage mitigation. As stated by Prosser and Keeton, Torts § 30 (at 165), a tort claim does not accrue for the "threat of future harm, not yet realized.”
Niagara Mohawk’s removal of the 11 functioning transformers did not reduce or limit the damage inflicted by the two fires caused by the defective transformers, nor was there any damage at the other locations nor imminent danger or certainty of transformer failure or damage if the transformers had not been replaced.
Risk avoidance is not the same as damage mitigation.
It is clear that plaintiff did not reduce damage by replacing *613 the 11 transformers, but merely reduced the risk that one or more of the 11 would malfunction. (Who can predict that none of the replacements will fail and cause a fire?)
For the record, the court was not persuaded by reliance of the Ferranti-Packard defendants on Bellevue S. Assocs. v HRH Constr. Corp. (78 NY2d 282) and Howard Stores Corp. v Foremost Ins. Co. (82 AD2d 398, affd 56 NY2d 991). These cases did not deal with situations involving products of such potential danger as these transformers.
The court recognizes plaintiff was faced with a catch-22 situation. Having had prior warnings as a result of the two fires, Niagara Mohawk was exposed to serious and extensive damages and penalties if other transformers failed and caused damage and/ or injury to third persons.
Plaintiff was exposed to claims of gross negligence and willful misconduct, punitive damages, penalties imposed by the Public Service Commission, and massive public criticism if a disaster occurred because it had not replaced the transformers. (See, Public Service Law §§ 25, 65 [5]; see also, Lee v Consolidated Edison Co., 98 Misc 2d 304 [1978]; Newman v Consolidated Edison Co., 79 Misc 2d 153.)
The court takes judicial notice of section 65 of the Public Service Law which mandates that every electric corporation is required to furnish and provide "safe and adequate” service, instrumentalities and facilities.
The court also takes judicial notice of the fact that Niagara Mohawk is under the jurisdiction of the Public Service Commission.
Nevertheless, Niagara Mohawk, a knowledgeable commercial consumer, was well aware of its responsibilities under the law and could have protected itself by appropriate terms in its agreement of purchase. One trusts it did so when it replaced the 11 transformers.
To permit a tort remedy for the replacement of the 11 functioning transformers would set a precedent with a far ranging impact.
THE MOTION OF MAY & CHRISTIE, GMBH
Defendant May & Christie, GMBH joins in the FerrantiPackard motion and also moves to dismiss because of lack of privity between it and the plaintiff. This defendant manufactured and distributed component parts of the transformers.
*614 Martin v Dierck Equip. Co. (43 NY2d 583) holds that a plaintiff not in privity may have an action in tort, but not in contract. Other cases have followed this rationale. (See, Antel Oldsmobile-Cadillac v Sirus Leasing Co., 101 AD2d 688, supra.)
Plaintiff does not allege privity of contract with May & Christie, GMBH. Consequently, the tort cause of action for the faulty transformers will stand, but, plaintiff’s third cause of action grounded in contract against May & Christie, GMBH must be dismissed.
MOTION OF MAGNETEK, INC. TO DISMISS
This defendant cross-moved to dismiss the complaint against them on the ground they have no liability because they are a separate corporation from May & Christie, GMBH, its subsidiary.
Magnetek, Inc. submitted affidavits reciting the barest of explanations as to its relationship with its subsidiary. The statements are conclusory with insufficient documentation to support them.
Ferranti-Packard has raised several questions of fact justifying further discovery, i.e., whether the purchase by Magnetek, Inc. of May & Christie, GMBH stock constituted a de facto merger.
On July 14, 1992, the Fourth Department held in Sweatland v Park Corp. (181 AD2d 243) that summary judgment was not appropriate in a products liability suit if there is a serious question whether a de facto merger has taken place. (See also, Billy v Consolidated Mach. Tool Corp., 51 NY2d 152.)
Plaintiff’s warranty claims are dismissed against all defendants. Its tort claims in negligence and products liability as to the 11 undamaged transformers are likewise dismissed against all defendants.
The motion of Magnetek, Inc. to dismiss is denied on the remaining causes of action.
The motion of May & Christie, GMBH to dismiss the third cause of action is granted.