■ NIAGARA MOHAWK POWER CORPORATION, Appellant, v FERRANTI-PACKARD TRANSFORMERS, INC., Now Known as NEI FERRANTI-PACKARD TRANSFORMERS, INC., et al., Respondents. [607 NYS2d 808] —Order unanimously affirmed without costs. Memorandum: Plaintiff contends on appeal that the court erred in granting the motion of defendants Ferranti-Packard Transformers, Inc., and Ferranti-Packard Transformers, Ltd. (collectively "Ferranti-Packard") to dismiss its warranty cause of action as untimely and so much of its negligence and strict liability causes of action as sought damages relating to 11 undamaged transformers for failure to state a cause of action. We disagree.

Plaintiff ordered 14 dry type cast coil network transformers and associated spare parts from Ferranti-Packard for use in its electrical network system. The transformers were delivered to plaintiff between July 1986 and February 1987, and installed in various public buildings in Buffalo. On July 31, 1989 and January 22, 1991, electrical failures occurred in two of the transformers, resulting in fires that destroyed the transformers and caused damage to the buildings in which they were located. A third transformer was damaged in the January 22, 1991 fire. Plaintiff replaced the remaining 11 undamaged transformers and commenced this action against Ferranti-Packard, among others, on theories of negligence, strict products liability, and breach of warranty. Each cause of action alleged damages for the cost of removing and replacing the 11 undamaged transformers.

Preliminarily, we note that Supreme Court should not have dismissed plaintiff's causes of action in negligence and strict products liability for failure to show that the transformers were in "imminent danger of failure" (157 Misc 2d 606, 612). In considering a motion to dismiss, every fact alleged in the pleading is assumed to be true *(see, Roland Pietropaoli Trucking v Nationwide Mut. Ins. Co.,* 100 AD2d 680). The complaint, as amplified by plaintiff's affidavit on the motion to dismiss, was sufficient to show for pleading purposes that the trans-

formers had a dangerous defect and were in imminent danger of incinerating.

Nevertheless, we conclude that such parts of those causes of action relating to the 11 undamaged transformers were properly dismissed. It is well settled that one may not recover in tort for direct or consequential damages resulting from product malfunction unless the defect in the product created an unreasonable risk of harm *(see, Bellevue S. Assocs. v HRH Constr. Corp.,* 78 NY2d 282, 290-295; *Arell's Fine Jewelers v Honeywell, Inc.,* 170 AD2d 1013; *Ralston Purina Co. v McKee & Co.,* 158 AD2d 969; *Graham v Rockwell Intl. Corp.,* 135 AD2d 1128; *Fargo Equip. Co. v Carborundum Co.,* 103 AD2d 1002; *Antel Oldsmobile-Cadillac v Sirus Leasing Co.,* 101 AD2d 688; *Hemming v Certainteed Corp.,* 97 AD2d 976). In determining whether a tort claim can be based on product malfunction, or whether a plaintiff's exclusive remedy is in contract, it is necessary to look to "[t]he nature of the defect, the injury, the manner in which the injury occurred and the damages sought" *(Bellevue S. Assocs. v HRH Constr. Corp., supra,* at 293; *see, Schiavone Constr. Co. v Mayo Corp.,* 56 NY2d 667, *revg on dissenting opn of Silverman, J.,* 81 AD2d 221, 227-234; *Dudley Constr. v Drott Mfg. Co.,* 66 AD2d 368).

Although plaintiff makes factual allegations that, if true, demonstrate the existence of a dangerous defect "bound to produce a catastrophic accident", plaintiff does not allege that it has sustained injury. Plaintiff may not integrate the injury to the three transformers with the 11 undamaged transformers to establish injury to all of the transformers *(cf., Trustees of Columbia Univ. v Gwathmey Siegal & Assocs. Architects,* 192 AD2d 151; *Trustees of Columbia Univ. v Exposaic Indus.,* 122 AD2d 747; *Trustees of Columbia Univ. v Mitchell/Giurgola Assocs.,* 109 AD2d 449; *see, Dudley Constr. v Drott Mfg. Co., supra).* Unlike the *Trustees of Columbia University* cases *(supra),* where there was a failure of part of an integrated, connected product, i.e., a curtain wall and a building facade, and the need to restore the entire product in order to prevent further failure, the transformers here were separate, independently functioning units and did not depend for their operation on any other unit.

We reject plaintiff's invitation to broaden tort relief to allow recovery for potential harm in the absence of actual injury. The Court of Appeals rejected that approach in *Bellevue S. Assocs. v HRH Constr. Corp. (supra,* at 294) to the extent that it denied recovery because the damages there were not the result of an "abrupt, cataclysmic occurrence". The necessity of

such an "occurrence" contemplates actual, not potential, injury *(see also, Long Is. Light. Co. v Trans Am. Delaval,* 646 Supp 1442; *O/B Leasing Co. v Mi-Jack Prods.,* 1991 US Dist Lexis 3205 [ND Ill, ED, Mar. 18, 1991, Plunkett, J.]). Moreover, the majority in *Bellevue S. Assocs. v HRH Constr. Corp. (supra,* at 294, n 2) rejected "as no distinction at all" the dissent's distinguishing test that liability should be allowed where the recovery sought is the cost of eliminating the hazard or making the product safe. Because plaintiff failed to state facts sufficient to show that it had suffered a cognizable injury with respect to the undamaged transformers, its causes of action in strict products liability and negligence were properly dismissed.

Further, plaintiff may not recover in mitigation of damages the replacement costs of the undamaged transformers. An injured party "is under an obligatory duty * * * to minimize the damages liable to result from * * * injury * * * [but the mitigation] must be reasonably warranted by and proportioned to the injury and consequences to be averted" *(Den Norske Ameriekalinje Actiesselskabet v Sun Print. & Publ. Assn.,* 226 NY 1, 7-8). Plaintiff's action in replacing the transformers cannot be characterized as mitigating damages; there was no injury from which to mitigate damages. The action that plaintiff took in removing the transformers was taken to prevent possible future harm. As Supreme Court noted, "Niagara Mohawk [undertook] risk avoidance and not damage mitigation." *(Supra,* at 612.) To accept plaintiff's expansive view of mitigation damages would create recovery for the expense of any measure taken to prevent accidents with respect to a potentially dangerous and defective product. As Professors Prosser and Keaton have cautioned, however, "[t]here does not seem to be any support for this position" (Prosser and Keaton, Torts § 101, at 710 [5th ed]).

Finally, we reject the contention that plaintiff's breach of warranty cause of action was timely. The warranty that covered the transformers did not extend to future performance *(cf., Parzek v New England Log Homes,* 92 AD2d 954, 955; *Mittasch v Seal Lock Burial Vault,* 42 AD2d 573, 574). The applicable Statute of Limitations period for breach of warranty in a sales contract is four years from the accrual of the cause of action; in this case, that date is four years from February 1987, when the last transformer was delivered *(see,* Uniform Commercial Code § 2-725). The limitations period thus expired in February 1991. The complaint was not served until July 1992 and, therefore, plaintiff's warranty cause of

action was untimely. (Appeal from Order of Supreme Court, Chautauqua County, Gerace, J.—Dismiss Complaint.) Present —Green, J. P., Pine, Lawton, Doerr and Boehm, JJ. *[See,* 157 Misc 2d 606.]