New Hampshire Ins. Co. v MF Global Fin. USA Inc. (2022 NY Slip Op 01880)





New Hampshire Ins. Co. v MF Global Fin. USA Inc.


2022 NY Slip Op 01880


Decided on March 17, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 17, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick
Peter H. Moulton, Lizbeth González, Julio Rodriguez III, Bahaati E. Pitt


Index No. 601621/09 Appeal No. 14812 Case No. 2021-01994 

[*1]New Hampshire Insurance Company et al., Plaintiffs-Appellants-Respondents, Vigilant Insurance Company et al., Plaintiffs,
v
MF Global Finance USA Inc., Defendant-Respondent-Appellant.



Plaintiffs appeal and defendant cross-appeals from the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered December 22, 2020, which, to the extent appealed from, denied plaintiffs-appellants' motion for summary judgment declaring that there is no coverage under the fidelity bonds they issued to defendant and dismissing the counterclaim for breach of contract, and granted defendant's motion for summary judgment to the extent of dismissing plaintiff insurers' fourth, fifth, and sixth affirmative defenses to the counterclaim and partially dismissing the first affirmative defense to the counterclaim and denied defendant's motion for summary judgment on its counterclaim.




Selendy & Gay PLLC, New York (Caitlin J. Hallighan and Ester Murdukhayeva of counsel), and Mansukhani, LLP, New York (Joseph Salvo and Gordon Rees Scully of counsel), for New Hampshire Insurance., Company, appellant-respondent.
Kaufman Borgeest & Ryan LLP, Valhalla (Kevin M. Mattessich and Paul C. Fonseca of counsel), for Liberty Mutual Insurance Company, appellant-respondent.
Clyde & Co US LLP, New York (Nicholas Magali of counsel), for Axis Reinsurance Company, appellant-respondent.
Mintz Levin Cohn Ferris Glovsky and Popeo P.C., New York (Therese M. Doherty and LisaMarie F. Collins of counsel), and Covington & Burling LLP, New York (P. Benjamin Duke and Russell M. Squire of counsel), for respondent-appellant.



KAPNICK, J.P. 


This 2009 declaratory judgment action involves a $141 million insurance coverage dispute between plaintiffs New Hampshire Insurance Company, Liberty Mutual Insurance Company, and Axis Reinsurance Company (Insurers) and defendant, commodity futures broker MF Global Finance USA, Inc. (MF Global). New Hampshire issued the primary bond insurance policy to MF Global's predecessor [FN1] and Liberty Mutual and Axis Reinsurance each issued excess financial institution bonds, covering the same policy period and incorporating the provisions and terms of the primary bond.[FN2] Defendant MF Global seeks coverage under those bonds for a trading loss incurred in February 2008 by Evan Brent Dooley, a broker for MF Global, who in 2012 pleaded guilty to exceeding speculative position limits in violation of 7 USC §§ 6a and 13(a)(5). Dooley was sentenced to five years' imprisonment and one year of supervised release and was ordered to pay restitution of over $141 million to MF Global upon release from prison.
For the reasons set forth below, we hold that defendant is covered under the fidelity bonds for its loss and is entitled to summary judgment in its favor.
This is the second time that an appeal in this action has been before us. In the first appeal (New Hampshire Ins. Co. v MF Global, Inc., 108 AD3d 463 [1st Dept 2013]) plaintiffs appealed from an order which denied their motion for summary judgment declaring that they are not obligated under their fidelity bonds to cover defendant's loss and, upon a search of the record, granted summary judgment to defendant[*2]. We modified, on the law, to vacate the grant of summary judgment to defendant and to grant defendant partial summary judgment to the extent of declaring that defendant sustained a direct financial loss under the fidelity bonds, and otherwise affirmed.
On this appeal, plaintiffs appeal from an order of the Supreme Court, New York County (Marcy S. Friedman, J.) to the extent it denied their motion for summary judgment to declare there is no coverage under the fidelity bonds they issued to defendant MF Global and granted defendant's motion for summary judgment to the extent of dismissing certain of the Insurers' affirmative defenses to defendant's counterclaim for breach of contract, and partially dismissed another affirmative defense. Defendant cross-appeals from the order to the extent it denied defendant's motion for summary judgment on its counterclaim for breach of contract in which it seeks the full amount of its claimed loss under the bonds with prejudgment interest.
BACKGROUND
As we explained in our order determining the first appeal:
"Defendant MF Global, Inc. is a commodities futures broker and is subject to the regulatory rules and oversight of the various exchanges on which it executes trades, including the Chicago Mercantile Exchange (CME). The CME is registered with, and must comply with regulations of, the United States Commodities Futures Trading Commission (CFTC). MF Global is a Clearing Member of the CME, and is approved to clear trades through the CME Clearing House. To maintain the integrity of the market, the CME Clearing House and clearing members such as MF Global become effective counterparties on each trade placed. In other words, the CME Clearing House assumes the position of direct legal counterparty to MF Global on all futures contracts submitted by MF Global to the Clearing House.
"In addition, as a clearing member, MF Global assumes complete responsibility for the financial obligations attendant to all trades and orders executed, and for all trading activity routed through its electronic trading systems. Thus, at the end of each trading day, or sometimes intraday, MF Global has to settle with the CME Clearing House for all losses on trades cleared through MF Global accounts, regardless of whether the customers initiating those trades are able to meet their payment obligations. This arrangement protects the market from risk of default by individual traders by transferring that risk to clearing members such as MF Global.
"Plaintiff New Hampshire Insurance Company issued a fidelity bond to MF Global's predecessor company covering the policy period from April 30, 2007 to April 30, 2008. The remaining plaintiffs are insurance companies that issued excess bonds to MF Global that incorporated the terms of the primary bond.
* * * * *
"Nonparty Evan Brent Dooley was a commodities broker associated with MF Global's Memphis, Tennessee office who was paid on a commission basis. During the evening of February 26, 2008, Dooley [*3]began trading commodities futures on the CME from his personal trading account using MF Global's electronic trading system. Dooley entered into a large number of 'sell contracts,' primarily for May wheat, and in doing so, exceeded his available margin credit. These 'sell contracts' created an aggregate open position that would be liquidated when corresponding 'buy contracts' were executed. If the price of May wheat decreased, the trades would be profitable, but if the price increased, a loss would ensue.
"After trading resumed the next morning, the price of May wheat rose quickly, and Dooley liquidated his positions, sustaining a loss over $141 million. Because of the large amount, the CME Clearing House requested an intraday settlement to cover the loss. By midday on February 27, 2008, MF Global transferred approximately $150 million from its settlement bank to the CME Clearing House. MF Global recorded the $141 million loss on its books as a bad debt, and thereafter submitted a claim under the bonds. Plaintiffs denied coverage asserting, inter alia, that MF Global did not suffer a 'direct financial loss' and that Dooley was not an 'employee'" (108 AD3d at 464-465).
THE BONDS
The "Insurance Cover" clause of the bonds requires the Insurers to indemnify MF Global for its loss sustained for:
"(i) any wrongful act committed by any employee, or
"(ii) any theft, fraudulent act or malicious act committed by any other person, which is committed with the intent to cause the insured to sustain a loss or with the intent to obtain financial gain for themselves or another person or entity they intended to obtain such gain and is first discovered by the insured during the bond period or the discovery period" (Section I [italics in original]. The bond provides that "words in italics have special meaning and are defined").
Loss means "the direct financial loss sustained by the insured as a result of any single act, single omission or single event, or a series of related or continuous acts, omissions or events" (Section 2.38).
The bonds define wrongful act with respect to trading as "any theft, dishonest or fraudulent act committed with the intent to obtain improper financial gain for: (i) an employee; or (ii) any person or organization in collusion with such employee who committed the wrongful act" (Section 2.53). The definition of employee is broad with eleven subparts of categories of individuals, including, for example, a natural person under "a contract of employment written or implied" or "working under the direct control and supervision of the insured" (Section 2.25). The bonds provide that the term "employee does not mean any independent broker, independent financial adviser, or any similar agent or independent representative remunerated on a sales or commission basis unless specifically agreed by the insurer and endorsed to this bond" (id.). Alternatively, the bonds define any other person as "any natural person who: (i) is not an employee or any [*4]insured; or (ii) does not hold any contract for services, written or implied, with any insured" (Section 2.2).
Thus, the bonds cover defendant for any direct loss it sustained as the result of either any wrongful act by an "employee," or any theft, fraudulent act or malicious act committed by "any other person." The bonds include several exclusions, two of which were invoked by the Insurers to deny coverage. Plaintiffs asserted that the loss was not a direct financial loss, but rather an indirect loss, and that defendant had suffered a contractual liability loss, both of which are excluded from coverage. They reasoned:
"While the CME's rules obligated MF Global to cover Dooley's trades, that liability is not covered under the Bonds. MF Global did not suffer a loss as a direct result of Dooley's trades. Dooley sustained the loss. MF Global may have thereafter been obligated to cover that loss, but that liability is an indirect loss outside the scope of coverage afforded by the Bonds and is excluded from coverage under Exclusion 3.9(i) and Section 3.2. [the contractual liability exclusion which is defined as '[a]ny liability assumed by the insured under contract or agreement except liability which would have attached to the insured in the absence of such contract or agreement']."
Coverage was denied on additional grounds, including that the Insurers concluded that Dooley was not an "employee," but an independent broker, and that as "any other person," he had not committed "[a]ny theft, fraudulent act or malicious act." The Insurers also invoked a termination of coverage provision under Section 6.2(iii) for employees and a common law defense of failure to mitigate damages. This litigation ensued.
THE FIRST SUMMARY JUDGMENT MOTION
In December 2009, the Insurers moved for summary judgment, seeking a declaration that they were not obligated to cover defendant's loss because it was not a "direct" loss under bond Section 2.38. The motion court (Bernard Fried, J.) denied the Insurers' motion, concluding that defendant had suffered a direct loss, and, after searching the record (CPLR 3212 [b]), found that Dooley was an "employee" who had committed a wrongful act for financial gain and granted summary judgment to defendant (29 Misc 3d 1207[A] [Sup Ct, NY County 2010]). On plaintiffs' appeal of that order, we rejected their argument that there had been an indirect loss and agreed with the motion court that defendant had suffered a "direct financial loss" which was covered under the bonds:
"The motion court properly concluded that MF Global's loss constituted a 'direct financial loss.' Although that term is not defined in the bonds, '[a] direct loss for insurance purposes has been analogized with proximate cause" (Aetna Cas. & Sur. Co. v Kidder, Peabody & Co., 246 AD2d 202, 209 [1st Dept 1998], lv denied 93 NY2d 805 [1999]; see Sorrentino v Allcity Ins. Co., 229 AD2d 481, 482 [2d Dept 1996] [using proximate cause as test for determining whether insurance [*5]loss was a direct loss]; Granchelli v Travelers Ins. Co., 167 AD2d 839, 839 [4th Dept 1990] ["Direct loss is equivalent to proximate cause"]; see generally Tonkin v California Ins. Co. of San Francisco, Inc., 294 NY 326, 329 [1945]).
"Here, Dooley's conduct in making unauthorized trades beyond his margin was the direct and proximate cause of MF Global's loss. Dooley's trading activity resulted in a near instantaneous shortfall for which MF Global, as a clearing member, was automatically and directly responsible. To ensure the integrity of the market, MF Global was obligated to promptly pay the CME Clearing House for the loss. In light of the immediacy of the payment, which was made only hours after the discovery of Dooley's trading, and the regulatory scheme upon which it was premised, MF Global's loss cannot be fairly viewed as simply satisfying a contractual liability to the CME. Contrary to plaintiffs' view, the payment to the CME is not a third-party loss for which MF Global is liable, but rather a direct loss to MF Global under the bonds.
"Nor is there any record support for plaintiffs' claim that multiple intervening events resulted in a 'protracted causal chain' between Dooley's trades and MF Global's loss. This case is distinguishable from Aetna Cas. & Sur. Co. v Kidder, Peabody & Co. (246 AD2d 202 [1998]). In Aetna, we addressed whether the fidelity bonds at issue covered litigation settlement payments made by Kidder Peabody to third-party investors who sustained losses as a result of insider trading schemes conducted by a Kidder Peabody employee (246 AD2d at 204-205). The settlement payments were made by Kidder Peabody years after the employee's misconduct (id. at 205-206). We concluded that the settlements were not direct losses because they were not the direct result of the employee's dishonest conduct (id. at 210). Instead, the losses stemmed from the employee's misconduct, which caused pricing irregularities in the stock, which led to losses to the investors, which led to litigation, which concluded in a settlement years after the employee's misconduct (id.).
"No such attenuated chain exists here. Dooley's improper trading did not result in harm to a third party that subsequently sought redress from MF Global. Rather, the effect of Dooley's actions was immediate and direct—MF Global bore the responsibility for the losses occurring on its trading system, and made good on those losses within hours of the misconduct. Furthermore, unlike the bonds in Aetna, the bonds here did not have an exclusion for trading losses. Instead, they expressly provide coverage for losses associated with trading of commodities and futures. Accordingly, because MF Global suffered a direct financial loss under the fidelity bonds, it is entitled to a declaration on that issue in its favor" (108 AD3d at 466-467 [emphasis added]).
However, we did agree with plaintiffs that the motion court should not have searched the record and determined as a matter of [*6]law that Dooley was an "employee" under the bonds. Plaintiffs had argued on that appeal that although MF Global contends Dooley was its "employee," Dooley was in fact an independent broker who was paid on a commission basis. Plaintiffs pointed to the record evidence that they said supported this position and asserted that even if this issue had been ripe for adjudication, the motion court had failed to address the "independent broker" exception in the bonds. Our decision noted, as had been argued by plaintiffs, that their "motion raised only the issue of direct financial loss, a discrete defense to coverage, and did not address the separate coverage defense of Dooley's employment status" and that discovery in this matter was not complete at the time the court searched the record (108 AD3d at 467-468). Accordingly, we vacated the grant of summary judgment to defendant, granted defendant partial summary judgment to the extent of declaring that defendant sustained a direct financial loss under the fidelity bonds, and otherwise affirmed.
THE SECOND MOTION FOR SUMMARY JUDGMENT AND THE PRESENT APPEAL
After further discovery, the Insurers again moved for summary judgment, arguing that coverage for MF Global's loss was barred under the contractual liability exclusion of the bonds in Section 3.2; the indirect loss exclusion of the bonds in Section 3.9(iv) (mechanical failure, error in programming, etc.); a termination of coverage provision applicable to an "employee" of the insured; and a failure to mitigate. They also sought an order dismissing defendant's counterclaim. Defendant moved for summary judgment on its counterclaim, seeking a final judgment in the amount of $141,024,494, together with prejudgment interest, and dismissing plaintiffs' affirmative defenses to the counterclaim.
The motion court denied the Insurers' motion in its entirety and granted MF Global's motion in part (2020 NY Slip Op 34243[U] [Sup Ct, NY County 2020]). It noted that plaintiffs' first affirmative defense alleges that defendant's claim "is barred by the terms, definitions, conditions and exclusions and limitations of the Bonds" and dismissed that affirmative defense to the extent that it is "based on the claims that (1) Dooley's February trades did not constitute a wrongful act within the meaning of section 1 (i) of the primary bond or a malicious act within the meaning of section 1 (ii) of the primary bond; and (2) coverage is excluded under primary bond sections 3.9 (i) or 3.9 (iv)" (id., *23). The motion court dismissed the second, fourth, fifth and sixth affirmative defenses, but let stand the third affirmative defense that defendant is not entitled to recover because Dooley was not an "employee" the seventh affirmative defense that defendant is not entitled to recover under the bonds to the extent that it knew that Dooley engaged in dishonest conduct prior to the trades at issue in this claim, and the eighth affirmative defense raised only by plaintiff Liberty Mutual [*7]Company concerning the extent to which there may be recovery under the excess bond, as that issue had not been addressed on the motions.
We agree with the motion court that plaintiffs cannot rely on the contractual liability exclusion for loss arising out of, based upon or attributable to any liability assumed by the insured under contract or agreement. As the Supreme Court noted, we expressly held in the prior appeal that "MF Global's loss cannot be fairly viewed as simply satisfying a contractual liability to the CME. Contrary to plaintiffs' view, the payment to the CME is not a third-party loss for which MF Global is liable, but rather a direct loss to MF Global under the bonds" (108 AD3d at 466). Plaintiffs tried to finesse the import of our holding to the motion court by arguing that the question is not whether defendant simply satisfied a contractual liability, but whether the loss had any "connection" to a contractual liability, arguing that it did have such a connection. However, the court appropriately rejected this reasoning, noting that plaintiff had a full and fair opportunity to be heard on the applicability of this contractual liability exclusion when it was before us on the prior appeal, and had in fact argued that the exclusion applied because defendant "sustained a loss only because it satisfied a contractual liability to a third party". Thus, the motion court correctly held that plaintiffs' argument was barred by the law of the case. "An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court, as well as on the appellate court . . . [and] operates to foreclose re-examination of [the] question . . ." (Delgado v City of New York, 144 AD3d 46, 51 [1st Dept 2016], quoting Carmona v Mathisson, 92 AD3d 492, 492-493 [1st Dept 2012] [internal quotation marks and citations omitted]).
In that same vein, the motion court also correctly rejected plaintiffs' argument that defendant's claim for coverage is barred by the indirect loss exclusions in the bonds. We have already held that Dooley's conduct "was the direct and proximate cause of MF Global's loss" (108 AD3d at 466). Apparently undeterred, plaintiffs urge us to find on this appeal that defendant suffered an indirect loss, that the indirect loss exclusion set forth in Section 3.9 (iv) applies and that their argument is not barred by the law of the case because we did not explicitly mention this section of the bonds in our order. That provision excludes coverage for indirect loss "arising out of, based upon or attributable to . . . "[m]echanical failure [ ] error in design . . . or breakdown or any malfunction or error in programming or errors or omissions in processing." Plaintiff's theory of indirect loss is premised on the following: the record shows that during Dooley's time at MF Global he traded commodity futures using defendant's electronic platform, OrderXpress, which is an electronic order routing system. A[*8]"position limit" control in OrderXpress was created, but it did not prevent the loss from Dooley's February trades because its system administrator failed effectively to activate the automated pre-trade risk control on Dooley as a user of OrderXpress. Thus, posit plaintiffs, defendant's loss was caused by its failure to turn on the automated control, which falls within the programming error exclusion set forth in Section 3.9(iv).
Plaintiffs' argument that defendant only suffered an indirect loss that is excluded from coverage under Section 3.9 (iv) is unpersuasive. As previously noted, we have already expressly held that "MF Global suffered a direct financial loss under the fidelity bonds [and] it is entitled to a declaration on that issue in its favor" (108 AD3d at 467). Furthermore, although our order did not mention this specific exclusion pertaining to errors in programming, etc., one of the plaintiffs had argued that coverage should be denied under this provision, and we ruled to the contrary when we determined that there had been a direct financial loss. We decline plaintiffs' invitation to contradict ourselves (see Board of Mgrs. of the 25 Charles St. Condominium v Seligson, 106 AD3d 130, 135-136 [1st Dept 2013]).
In any event, even if we had not previously held that defendants suffered a direct financial loss, plaintiffs' argument about this exclusion fails on the merits. "The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds" (Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co., 12 NY3d 302, 306 [2009]). Exclusions "must be specific and clear in order to be enforced," and "are not to be extended by interpretation or implication but are to be accorded a strict and narrow construction" (id. at 307, citing Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984]). To invoke the exclusion under Section 3.9(iv), the Insurers must prove a loss "arising out of, based upon or attributable to" any "error in design" or "programming." Notably, the prefatory words "arising out of, based upon or attributable to" are applicable to all the exclusions in the bonds, including Section 3.2 for contractual liability. The same reasoning that we applied in rejecting plaintiffs' argument regarding Section 3.2, that defendant only suffered an indirect loss, pertains here. We agree with defendants that a narrow reading of the exclusion in Section 3.9(iv) cannot reasonably be construed to exclude coverage simply because there was an error in programming when a willful, criminal act by an "employee" or "any other person" is the direct, immediate, and proximate cause of MF Global's loss. In other words, in the absence of Dooley's willful and deliberate criminal acts, no loss to defendant would have resulted from defendant's oversight in not activating the automated risk control that would have placed electronic position limits on Dooley.
Further, the loss caused by Dooley contrasts to cases where an [*9]exclusion bars coverage because the excluded activity was "the immediate and efficient cause of the injury" (New Hampshire Ins. Co. v. Jefferson Ins. Co. of N.Y., 213 AD2d 325, 327 [1st Dept 1995]; see also Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co., 91 AD2d 317 [4th Dept 1983] [applying exclusion for the operation or use of an automobile to a loss that arose from the explosion of a truck]). To the contrary, the very purpose of this insurance, as explained by American International Group, of which plaintiff is a member company,[FN3] is to protect financial institutions "against criminal behavior of a dishonest employee or third party" (https://www.aig.com/business/insurance/management-liability/crime-and-financial-institution-bonds [last visited February 12, 2022]). Accordingly, we hold that the exclusion in Section 3.9(iv) does not apply.
The motion court correctly rejected the Insurers' fifth affirmative defense based on a failure to mitigate damages. Plaintiffs claim that defendant failed to mitigate its damages when it did not take action upon learning of risky trades that Dooley had made prior to the February trades that resulted in the $141 million loss. However, the bonds contain no provision or condition addressing the insured's alleged duty to mitigate loss. Further, the motion court recognized that the Insurers could not cite any authority to support a common-law mitigation duty as a coverage defense against their insured for allegedly failing to prevent a covered loss from occurring in the first place. There was no loss until the over $141 million loss that occurred on February 27, 2008 - - "no injury from which to mitigate damages" (see generally Niagara Mohawk Power Corp. v Ferranti-Packard Transformers, 201 AD2d 902, 904 [4th Dept 1994]). Before then, Dooley had satisfied each of the margin calls issued to him and paid all debt balances. Even if defendant had some duty to mitigate a loss covered under the bonds, plaintiffs have not demonstrated that there is a triable issue of fact as to whether there was anything defendant could have done on February 27, 2008 to mitigate the actual loss.
We also agree with the motion court that Dooley's conduct on February 26-27, 2008 constituted both a "wrongful act" as that term is defined under bond Section 2.53 and a "malicious act" as reflected in New York case law; that if Dooley was an "employee" the bond's coverage grant under Section 1(i) has been met; and that if Dooley was "any other person" the coverage grant under Section 1(ii) also has been met. Dooley admitted in his federal plea agreement that his trading was illegal because he violated the statutory position limit for wheat futures contracts on February 26-27, 2008 and had "devised and participated in an artifice to defraud MF Global and to obtain money and property from MF Global by means of materially false and fraudulent pretenses, representations, and promises."
It ill behooves plaintiffs to argue on this appeal that the motion [*10]court was wrong when it concluded that Dooley had committed a "wrongful act" given that in our prior order, we noted that plaintiffs had not challenged "the [prior] motion court's finding that Dooley committed a 'wrongful act' with the intent to obtain a financial gain for himself" (108 AD3d at 466 n). The Insurers actually moved for reargument, asking, among other things, for us to clarify or delete this finding, and we denied the motion. That aside, we adopt Supreme Court's reasoning that "[u]nder any construction, Dooley's trading activity with the intent to defraud MF Global constitutes a wrongful act under sections 1 (i) and 2.53 of the bond" (2020 NY Slip Op 34243[U], *6).
However, whether Dooley committed a "wrongful act" requires no further analysis for our disposition of this appeal. A "wrongful act" is only covered under the bonds if it is committed by an "employee" as opposed to "any other person" and we conclude that at this point in the litigation, plaintiffs are bound by their position that Dooley was not an "employee" but was "any other person." Although the motion court found that the record raises triable issues regarding Dooley's status as either an "employee" or as "any other person," the fact remains that, as defendant points out, the Insurers have consistently contended for twelve years that Dooley is not an "employee" but rather an independent broker, and, therefore, "any other person" (defined by the bonds to include anyone who is not an "employee"). In their complaint seeking a declaratory judgment that MF Global's claim is not covered under the terms of the bonds, plaintiffs allege that Dooley was not an "employee" and that "MF Global's claim can only be covered, if at all, under Insuring Clause (ii) [coverage for "any other person"], but MF Global cannot establish the conditions of coverage thereunder because Dooley's trades do not constitute a 'theft, fraudulent act or malicious act.'"
Most importantly, the Insurers advanced their position that Dooley was not an "employee" in their prior appeal to this Court when they sought from us, and obtained, an order vacating the motion court's determination that Dooley was an "employee." Moreover, plaintiffs argued before the motion court in the second summary judgment motion that Dooley was not an "employee." "Under the doctrine of judicial estoppel, or estoppel against inconsistent positions, a party is precluded from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding" (Nestor v Britt, 270 AD2d 192, 193 [1st Dept 2000] [internal quotation marks and citation omitted]; see also generally Herman v 36 Gramercy Park Realty Assoc., LLC, 165 AD3d 405, 406 [1st Dept 2018]); D & L Holdings v Goldman Co., 287 AD2d 65, 71 [1st Dept 2001]).[FN4] Thus, we conclude that plaintiffs are bound by their position that, as they allege in their complaint, there could only be coverage for this loss if Dooley, as "any other person[*11]" committed a theft, fraudulent act or malicious act.
We agree with the motion court that Dooley clearly committed a malicious act. He admitted in his plea agreement to having "devised and participated in an artifice to defraud in which he intended to trade at the CBOT [Chicago Board of Trade] in futures contracts in a manner exceeding [his] financial ability to pay for potential trading losses resulting from such trades, with the knowledge and intent that MF Global, as the Clearing Member for these trades, would be responsible to pay the CBOT's clearing house for any losses he incurred." As the Court of Appeals has explained, a malicious act, "[i]n a legal sense [ ] means a wrongful act, done intentionally, without just cause or excuse (citation omitted). It does not mean actual malice or ill-will, but consists in the intentional doing of a wrongful act without legal justification" (Lamb v S Cheney & Son, 227 NY 418, 422 [1920]).
The Insurers' arguments regarding why there is a triable issue as to whether Dooley committed a malicious act ring hollow. They contend, among other things, that a malicious act cannot be inferred solely from the fact that Dooley's trading resulted in losses. However, in this case, the evidence of Dooley's malicious act far exceeds the fact that his trading caused losses. He went on a criminal trading spree, in which he established an illegal futures position through MF Global's trading system, knowing that he did not have the financial ability to ever deposit the required margin to cover the trades, and that MF Global would be on the hook for any losses, which amounted to over $141 million.
Finally, the remaining affirmative defenses that the motion court declined to dismiss are not sufficient to defeat defendant's entitlement to summary judgment. The affirmative defense based upon a termination of the bonds fails because that termination provision applies only to employees, and as we have now definitively held, plaintiff is bound by its position that Dooley was not an "employee." Further, the seventh affirmative defense that defendant is not entitled to recover under the bonds to the extent it knew that Dooley engaged in dishonest conduct prior to the trades at issue, has no merit. There is no such exclusion or condition in the bonds. Moreover, even assuming defendant was negligent in not controlling Dooley's conduct prior to the loss sustained in February 2008, as was set forth by plaintiffs' counsel in their coverage opinion letter to the Insurers, the insured's negligence is not a defense to a bond claim (see generally 11A Steven Plitt et al., Couch on Insurance 3d § 162:11 [2017]).
Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered December 22, 2020, which, to the extent appealed from, denied plaintiffs-appellants' motion for summary judgment declaring that there is no coverage under the fidelity bonds they issued to defendant and dismissing the counterclaim for breach [*12]of contract, and granted defendant's motion for summary judgment to the extent of dismissing plaintiff insurers' fourth, fifth, and sixth affirmative defenses to the counterclaim and partially dismissing the first affirmative defense to the counterclaim and denied defendant's motion for summary judgment on its counterclaim, should be modified, on the law, to grant defendant's motion for summary judgment on liability on its counterclaim and to dismiss the affirmative defenses to the counterclaim in their entirety (other than the eighth affirmative defense asserted by Liberty Mutual Insurance Company), and to remand for further proceedings consistent with this order, and otherwise affirmed, with costs.
Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered December 22, 2020, modified, on the law, to grant defendant's motion for summary judgment on liability on its counterclaim and to dismiss the affirmative defenses to the counterclaim in their entirety (other than the eighth affirmative defense asserted by Liberty Mutual Insurance Company), and to remand for further proceedings consistent with this order, and otherwise affirmed, with costs.
Opinion by Kapnick, J. All concur.
Kapnick, J.P., Moulton, González, Rodriguez, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 17, 2022



Footnotes

Footnote 1: In 2011, after this action was commenced, defendant MF Global, Inc. was placed into a liquidation proceeding under the Securities Investor Protection Act, and when the automatic bankruptcy stay was lifted, current defendant MF Global Finance USA, Inc. was substituted as defendant.

Footnote 2: Of the eight excess insurers who were originally plaintiffs in this action, all but Liberty Mutual and Axis Reinsurance have settled with defendant.

Footnote 3: https://www.newhampshireinsurancecompany.com

Footnote 4: Although defendant has taken the position that Dooley was an "employee" and is covered as such under the bonds, or alternatively, that he is "any other person," it is not now estopped from arguing that Dooley is "any other person"; unlike the Insurers, defendant has not prevailed on its position by obtaining a favorable ruling from this Court on the prior appeal.